Victor A. Sahn (CA Bar No. 97299)
  vsahn@sulmeyerlaw.com
Daniel A. Lev (CA Bar No. 129622)
  dlev@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Howard M. Ehrenberg, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:08-bk-10277-BB |
| Axium International, Inc., | Chapter 7 |
| Debtor. | Jointly Administered With Case: |
| | Case No. 2:08-bk-10376-BB |
| | Substantively Consolidated With Cases: |
| | Case No. 2:08-bk-10294-BB |
| | Case No. 2:08-bk-10327-BB |
| | Case No. 2:08-bk-10339-BB |
| | Case No. 2:08-bk-10304-BB |
| | Case No. 2:08-bk-10312-BB |
| | Case No. 2:08-bk-10340-BB |
| | Case No. 2:08-bk-10297-BB |
| | Case No. 2:08-bk-10329-BB |
| | Case No. 2:08-bk-10319-BB |
| | Case No. 2:08-bk-10326-BB |
| | Case No. 2:08-bk-10332-BB |
| | Case No. 2:08-bk-10336-BB |
| | Case No. 2:08-bk-10314-BB |
| | Case No. 2:08-bk-10317-BB |
| | Case No. 2:08-bk-10333-BB |
| | Case No. 2:08-bk-10291-BB |
| | Case No. 2:08-bk-10338-BB |
| | Case No. 2:08-bk-10280-BB |
| | Case No. 2:08-bk-10305-BB |
| | Case No. 2:08-bk-10335-BB |
| | Case No. 2:08-bk-10321-BB |
| | Case No. 2:08-bk-10285-BB |
| | Case No. 2:08-bk-10320-BB |
| | Case No. 2:08-bk-10306-BB |
| | Case No. 2:08-bk-10311-BB |

|   |   |
|---|---|
| | Case No. 2:08-bk-10301-BB<br>Case No. 2:08-bk-10298-BB<br>Case No. 2:08-bk-10341-BB<br>Case No. 2:08-bk-10331-BB<br>Case No. 2:08-bk-10325-BB<br>Case No. 2:08-bk-10290-BB<br><br>**CHAPTER 7 TRUSTEE'S OPPOSITION TO (1) MOTION FOR LEAVE TO FILE LAWSUIT AGAINST BANKRUPTCY TRUSTEE AND (2) MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (Action in Non-bankruptcy Forum)**<br><br>DATE: September 15, 2009<br>TIME: 2:00 p.m.<br>PLACE: Courtroom "1475" |
| In re<br><br>Diversity MSP, Inc.,<br><br>    Debtor. | Case No. 2:08-bk-10376-BB<br><br>Chapter 7<br><br>Jointly Administered With Case:<br><br>Case No. 2:08-bk-10277-BB<br><br>Substantively Consolidated With Cases:<br><br>Case No. 2:08-bk-10372-BB<br>Case No. 2:08-bk-10316-BB<br>Case No. 2:08-bk-10373-BB<br>Case No. 2:08-bk-10375-BB |
| ☒ Affects Both Debtors | |
| ☐ Affects Axium International, Inc. | 2:08-bk-10277-BB |
| ☐ Affects Diversity MSP, Inc. | 2:08-bk-10376-BB |

Howard M. Ehrenberg, the duly appointed, qualified and acting Chapter 7 Trustee (the "Trustee") for the jointly administered and separately substantively consolidated estates of the debtors Axium International, Inc., AV Centurion Film, Inc., AV Global, Inc., Avalon Payroll Group, Inc., Avalon Production Accounting, Inc., Avalon Visual Corp., Avalon Worldwide, Inc., Avalon Film Services, Inc., Avalon Hollywood Services, Inc., AX Centurion Film, Inc., AX Global, Inc., Axi Cash, Inc., AXICO, Inc., Axium ATB, Inc., Axium Bond Corp., Axium Cinema, Inc., Axium Entertainment, Inc., Axium Film Corp., Axium Holdings, Inc., Axium Hollywood Services, Inc., Axium Payroll Group, Inc., Axium Payroll Services, Inc., Axium SC, LLC, Axium Visual Corp., Axium Worldwide, Inc., Centurion Cinema, Inc., ECG Minn RE, LLC, Global Enterprises, Inc., Global Music, Inc., Global Worksource, Inc., PAV Film Services, Inc., Talent VMS, Inc., PAX Film Services, Inc., Diversity MSP, Inc. dba ECG dba Ensemble Chimes Global, Diversity Internal, Inc., Ensemble Chimes Servicing, Inc., and Ensemble Chimes Global Puerto Rico, Ltd. (collectively, the "Debtors"), hereby submits his Opposition (the "Opposition") to the Motion for Leave to File Lawsuit Against Bankruptcy Trustee and the Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362 (Action in Non-bankruptcy Forum) (collectively, the "Motions"), filed by BDO Seidman, LLP ("BDO"), and represents as follows:

I.

## INTRODUCTION

While BDO was Axium's auditor, BDO failed to include a $100 million liability on "Axium's" financial statements. The Trustee has asserted a negligence claim against BDO and - as he is required to pursuant to BDO's engagement letters - commenced arbitration of that claim. BDO agreed to the arbitration, filed an answer in the arbitration, and selected an arbitrator. BDO now seeks rescission of those engagement letters it agreed required arbitration of the Trustee's claim and moves for leave to file a rescission action in New York state court.

BDO's Motions must be denied. BDO mischaracterizes the nature of the proposed Rescission Action in order to make it appear as though it does not implicate essential rights of the estates.[1] More fundamentally, BDO omits controlling law and key facts that dictate that its rescission claim must be arbitrated regardless of whether it is a core proceeding. More specifically, BDO fails to tell this Court that a federal court rejected BDO's same argument, on the same engagement letter, brought by the same lawyers, and ordered its rescission claim to arbitration. BDO Seiman, LLP v. Kirschner, Civ. No. 09-634, MDL No. 2021, 2009 WL 2168765 (W.D. Pa. July 16, 2009).[2] BDO also fails to cite to the Court controlling, on-point authority in violation of the ethical rules governing counsel before this Court. Prima Paint Corp. v. Flood and Conklin Mfg. Co., 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) (fraudulent inducement claims as to the whole contract must be arbitrated). BDO even misrepresents to the Court the arbitration provisions, including falsely stating that an appeal of the arbitration award must be filed in New York state court.

In truth, the proposed action seeks to permanently alter the rights of the estates with respect to justiciable claims already being prosecuted against BDO in arbitration. Because the Rescission Action is a core proceeding, affecting property rights of the estates, (i) New York state courts have no jurisdiction over the Rescission Action and (ii) this Court still must enforce the arbitration clause unless it "inherently conflicts" with the Federal Arbitration Act. MBNA America Bank, N.A., v. Hill, 436 F.3d 104 (2d Cir. 2006). Either way, in fact in every way, core proceeding or not, BDO's Motions must be denied.

This Court should not assist BDO's forum shopping, seeking to delay the Trustee's recovery and depleting the estates' assets to force a settlement. To allow yet

---

[1] Capitalized terms are ascribed the same meaning as in the Motions, unless otherwise defined herein.

[2] Attached hereto as Exhibit "A" and incorporated herein by reference, is a true and correct copy of the Court's opinion.

another jurisdiction to consider the Rescission Action would be a serious waste of the estates' limited resources, the resources of the New York state courts, as well as the time and energy of the Trustee.

## II.

## BDO FAILS TO ESTABLISH "CAUSE" WARRANTING RELIEF FROM STAY TO SUE THE CHAPTER 7 TRUSTEE IN NEW YORK STATE COURT

BDO's argument that the automatic stay does not enjoin it from commencing the Rescission Action is contradicted by the proposed complaint it attached as Exhibit "B" to the motion for relief from stay. Throughout the proposed complaint, BDO alleges that it is entitled to rescission of the Engagement Letters due to a variety of misrepresentations of the Debtors' senior management during the years prior to the bankruptcies. Moreover, BDO alleges that the Debtors' management failed to disclose that the Axium entities "were a completely fraudulent enterprise". Curiously, but understandably, absent from the proposed complaint and the Motions is any reference to the legal fact that BDO, as auditor, was required to discover the fraudulent enterprise it now claims was concealed during the course of its audits. See NCP Litigation Trust v. KPMG, LLP, 901 A.2d 871, 882 (N.J. Sup. Ct. 2006) (holding that auditor had an obligation to detect fraud)[3]; BDO Seidman LLP v. Lewis B. Freeman et al. (In re E.S. Bankest, L.C.), Case No. 04-17602-BKC-AJC (Sept. 14, 2005) at 24 ("Since BDO specifically contracted and agreed to "detect fraud," it cannot claim now that it could not "detect fraud" because of "fraud.")[4]; Motions Ex. "A" (Engagement Letter) at 24 ("We will design our audit to provide reasonable assurance of detecting errors or **fraud** that would have a material effect on the financial statements.") (emphasis added).

---

[3] Attached hereto as Exhibit "B" and incorporated herein by reference, is a true and correct copy of the decision.

[4] Attached hereto as Exhibit "C" and incorporated herein by reference, is a true and correct copy of the Court's opinion.

It is the negligence of BDO in this regard that led the Trustee to commence the arbitration proceeding before the American Arbitration Association against BDO seeking damages as result of BDO's multiple failures. Thus, any facts supporting BDO's alleged rescission claims could and should have been discovered, and thereafter pursued, by BDO prior to the petition dates. As such, BDO's analysis of the automatic stay provisions of the Code is entirely erroneous and Section 362(a)(1) certainly prevents the commencement of the Rescission Action without permission from this Court.

The further contention that Section 362(a)(3) does not bar the action since it does not implicate property of the estates equally is unfounded. The Trustee's right to seek damages against BDO, which he is doing through the arbitration action, arises, notably, from the Engagement Letters which set forth the contractual relationship between BDO and the Debtors. By seeking to rescind the Engagement Letters, BDO undoubtedly is seeking to alter and affect the rights of the estates to seek and collect damages due to BDO's inept and negligent auditing practices.[5] Thus, BDO certainly is enjoined from instituting the Rescission Action by multiple provisions of Section 362(a). The question before this Court, thus, is whether BDO should be granted leave from the stay to file the Rescission Action in New York state court.

In <u>In re Hakim</u>, 212 B.R. 632 (Bankr. N.D. Cal. 1997), a case cited by BDO, the Court noted that courts have enumerated various factors relevant to relief from stay determinations. According to the Court, some courts have articulated twelve factors for

---

[5] The arguments that the Debtors "relinquished" their rights under the Engagement Letters pre-petition is not supported by any competent evidence, let alone any controlling decisional or statutory law. Also untrue is the statement that "Axium rejected the Engagement Letter pursuant to Bankruptcy Code section 365(d)" since, to the extent they were executory contracts, they were not assumed and no motion to extend the time to assume or reject was ever filed. This, of course, presumes a finding, again not supported by any competent evidence or law, that the Engagement Letters were, indeed, executory contracts. As this Court knows, an executory contract is one under which the obligations of both parties are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other. <u>In re Robert L. Helms Constr. & Dev.</u>, 139 F.3d 702, 705 (9th Cir. 1998). As, even according to BDO, the services to be rendered concluded pre-petition, the Engagement Letters do not have the hallmarks of executory contracts and they would not be subject to the assumption and rejection provisions of Section 365.

[DAL\LIT\528783.1 9/1/2009 (12:45 PM)]        6

consideration, other courts review seven factors, and still another court has listed ten factors.[6] However, as further noted by the Court in <u>Hakim</u>, all of these factors have been identified by courts in balancing the hardships on the parties in the context of federal and state litigation. When such a balancing test is undertaken, the Trustee is confident the

---

[6] "The earliest compilation of factors appears in <u>In re Curtis</u>, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). The court identified the following factors, which have also been adopted by the Second Circuit in <u>In re Sonnax Industries, Inc.</u>, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) Whether the relief will result in a partial or complete resolution of the issues. (2) The lack of any connection with or interference with the bankruptcy case. (3) Whether the foreign proceeding involves the debtor as a fiduciary. (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases. (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation. (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question. (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties. (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c). (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f). (10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties. (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial. (12) The impact of the stay on the parties and the "balance of hurt."

In <u>In re Johnson</u>, 115 B.R. 634, 636 (Bankr. D. Minn. 1989), the Court identified seven factors, which are also relied upon the by court in <u>Edmondson v. America West Airlines, Inc. (In re America West Airlines, Inc.)</u>, 148 B.R. 920, 923-924 (Bankr. D. Ariz. 1993):

1. Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate; 2. Whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter; 3. Whether the state-court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial were deferred; 4. Whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter; 5. Whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit; 6. Whether the creditor has a probability of success on the merits; 7. And, as this Court now recognizes, whether the interests of the debtor and the estate would be better served by the resolution of threshold bankruptcy-law issues in the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

In <u>In re Marvin Johnson's Auto Service, Inc.</u>, 192 B.R. 1008, 1014 (Bankr. N.D. Ala. 1996), Judge Cohen stated that "in balancing the equities, the Court should consider certain factors. These are:

(1) trial readiness; (2) judicial economy; (3) the resolution of preliminary bankruptcy issues; (4) costs of defense or other potential burden to the estate; (5) the creditor's chances of success on the merits; (6) specialized expertise of the non-bankruptcy forum; (7) whether the damages or claim that may result from the nonbankruptcy proceeding may be subject to equitable subordination under Section 510(c); (8) the extent to which trial of the case in the non-bankruptcy forum will interfere with the progress of the bankruptcy case; (9) the anticipated impact on the movant, or other nondebtors, if the stay is lifted; and, (10) the presence of third parties over which the bankruptcy court lacks jurisdiction."

<u>Id.</u>, at n. 18, n. 19, and n. 20.

Court will agree that there is an insufficient showing of cause supporting the commencement of a separate action in New York state court, outside of the arbitration proceeding or this Court.

In sum, BDO is not entitled to stay relief under Section 362(d)(1) because: (i) the Rescission Action must be brought in the arbitration and not in a parallel state court proceeding that will waste judicial resources, as well as precious resources of the Debtors' estates, (ii) the Rescission Action is a core proceeding and can be fully determined by the Bankruptcy Court, (iii) the Rescission Action directly involves distinct property rights of the Debtors' estates and seeks to redefine, diminish, and eliminate the Trustee's rights arising under the Engagement Letters, and (iv) the Rescission Action will interfere with the administration of the bankruptcy estates by distracting the Trustee's attention with duplicative parallel proceedings in separate courts and will prejudice the interests of creditors and diminish their recovery from the estates.

### A. The Rescission Action is Barred and Is a Waste of Judicial and Estates' Resources

As a matter of law, BDO cannot bring the Rescission Action in New York state court and thus BDO's Motions must be denied. First, the United States Supreme Court holds that claims for fraud in the inducement of the contract - BDO's expressly stated claim here - must be arbitrated. Prima Paint, 388 U.S. at 403-04.; see also Motion at Ex. "B" at 47(alleging that entire contract was fraudulently induced – "The engagement letters were entered into under circumstances that were, unbeknownst to BDO, completely permeated by the fraud and criminal activity of the senior management of Axium."). Thus, BDO, as a matter of controlling law, cannot bring its rescission claim in state court, but must assert it in the arbitration.

Second, in BDO Seiman, LLP v. Kirschner, Civ. No. 09-634, MDL No. 2021, 2009 WL 2168765 (W.D. Pa. July 16, 2009) (BDO counsel DLA Piper), the Court held that the same rescission claim of fraud in the inducement, based on the same language of a BDO engagement letter, brought by the same BDO lawyers, must be brought in the

arbitration under Prima Point. See id. at *3. See also Ex. "A" to Motion at 43 (arbitration of "any dispute, controversy, or claim . . . including disputes regarding the validity or enforceability of this agreement").

Third, contrary to BDO's statement, the arbitration provision makes *no provision for court action for injunctions.* Cf. Motion at 3 with Ex. "A" at 43 (arbitration of "any dispute, controversy, or claim . . . including disputes regarding the validity or enforceability of this agreement"). Moreover, and also contrary to BDO's statement, appeals from the arbitration do *not* need to be brought in New York state court, but can be confirmed "in any federal or state court of competent jurisdiction." See Ex. "A" to Motion at 44.

Fourth, BDO fails to advise the Court that it already answered the Arbitration Statement of Claim on March 3, 2009, included defenses of *in pari delicto* and unclean hands, but still agreed to arbitration, and picked an arbitrator, under the same engagement letters it now seeks to rescind.[7]

Fundamentally, BDO admits that its Rescission Action is "an effort to defend against the claims made by Ehrenberg in the pending Arbitration Proceeding." The Rescission Action arises from the same factual nexus as the claims being pursued by the Trustee in the arbitration proceeding commenced against BDO. The legal and factual issues raised by the Rescission Action, which in reality is nothing more than an affirmative defense to the Trustee's claims, involve similar discovery from similar parties, and the factual investigation in the respective claims, for example, the nature of the pre-petition relationship, obligations and duties of the Debtors and BDO under the Engagement Letters, will be identical. It is nonsensical and a waste of judicial resources to have duplicate parallel proceedings running in different courts on identical issues. See In re Conejo Enters., 96 F.3d 346, 353 (9th Cir. 1996 ("staying the state action promoted

---

[7] Attached hereto as Exhibit "D" and incorporated herein by reference, is a true and correct copy of BDO Seidman, LLP's Answer, Affirmative Defenses, and Response to Statement of Claim.

judicial economy by minimizing the duplication of litigation in two separate forums and promoting the efficient administration of the estate"). The fact that BDO seeks to run a parallel and competing procedure in another distant forum, rather than simply filing its action in this Court or pursuing such claims as defenses in the pending arbitration, smacks of forum shopping, which this Court should not countenance – particularly at the expense of these estates' creditors.

### B. The Rescission Action is a Core Proceeding

Even if the Rescission Action was not confined to the arbitration by settled law, the Motions still must be denied because the Rescission Action is a core proceeding and cannot be brought in New York state court. A non-exclusive list of core proceedings is enumerated in 28 U.S.C. § 157(b)(2), including, among other things: ("(A) matters concerning administration of the estate" and "(O) other proceedings affecting the liquidation of the assets of the estate . . . " Disputes over pre-petition contracts between the Debtors and third parties should be found to be within the Bankruptcy Court's "core" jurisdiction when the results of such determinations are central to the possible success or failure of the administration of the estates. In re Ascher, 128 B.R. 639 (Bankr. N.D. Ill. 1991) ("[a] determination of what is property of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive [i.e., "core"] jurisdiction."). See also Green v. Mass. Cas. Ins. Co., 269 B.R. 782 (N.D. Ill. 2001) (rescission action brought by insurer due to alleged misrepresentations by debtor-insured constitute core proceedings). Accordingly, the Rescission Action is a core proceeding and, as such, and contrary to BDO's assertions, this Court may make final rulings in the Rescission Action. In fact, this Court must enforce the arbitration clause and *deny* BDO's Motions of these core claims. MBNA America, supra, (holding that the bankruptcy court will not have discretion to override an arbitration agreement, even of core claims, unless it finds that the proceedings are based on provisions of the Bankruptcy Code that "inherently conflict"

with the Arbitration Act or that arbitration of the claim would "necessarily jeopardize" the objectives of the Bankruptcy Code).

### C. The Rescission Action Directly Implicates Assets of the Debtors' Estates

BDO is wrong that the Rescission Action does not implicate assets or property rights of the Debtors' estates. As discussed at length above, BDO is seeking to alter and define the Trustee's rights to seek damages due to BDO's negligent auditing practices under the Engagement Letters. The very fact that BDO seeks to sue the Trustee as a party to the Rescission Action indicates its intent to exercise control over the Trustee's rights in, to, and under the Engagement Letters. BDO effectively seeks to deny the Trustee any right to seek damages under the Engagement Letters, thereby likely reducing any recovery by the Trustee in the arbitration by potentially millions of dollars, at great prejudice to the estates' creditors.

### D. The Rescission Action Will Interfere With the Administration of the Bankruptcy Estates and Prejudice the Interests of Creditors

The separate commencement of the Rescission Action in New York state court clearly interferes with the Trustee's administration of these estates by forcing the Trustee to litigate two cases involving substantially the same underlying facts in two different forums at the same time. The Trustee's time and attention will be unnecessarily wasted dealing with duplicate issues in multiple venues, and the assets of the estates will be unnecessarily diminished in the process, thereby reducing recovery to creditors to their prejudice. Moreover, creditors will be further prejudiced if BDO is permitted to alter the Debtors' rights under the Engagement Letters or otherwise prohibit the Trustee from pursuing compensatory damages from BDO due to its negligent auditing practices.

## III.

## REGARDLESS, THIS COURT SHOULD NOT PERMIT BDO TO FILE A SEPARATE LAWSUIT AGAINST THE TRUSTEE

Even if the automatic stay does not apply, which it does, this Court should not permit BDO to sue the Trustee as a party to the Rescission Action. The Ninth Circuit, under the Barton Doctrine, clearly forbids lawsuits against bankruptcy trustees outside the bankruptcy court for official acts taken as trustee. In re Crown Vantage, Inc., 421 F.3d 963, 970 (9th Cir. 2005) ("a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity.").

The Ninth Circuit, in Crown Vantage, identified a number of factors courts should consider when determining whether to allow a lawsuit to proceed against a bankruptcy trustee:

> 1. Whether the acts or transactions relate to the carrying on of the business connected with the property of the bankruptcy estate. If the proceeding is under 28 U.S.C. § 959(a), then no court approval is necessary. However, the moving party may request this initial review by the bankruptcy court in the motion for leave to sue trustee, or perhaps in the form of a complaint, seeking declaratory judgment from the bankruptcy court.
> 2. If approval from the appointing court appears necessary, do the claims pertain to actions of the trustee while administering the estate? By asking this question, the court may determine whether the proceeding is a core proceeding or a proceeding which is related to a case or proceeding under Title 11, United Sates Code.

3. Do the claims involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity?

4. Are the movants or proposed plaintiffs seeking to surcharge the trustee; that is, seeking a judgment against the trustee personally?

5. Do the claims involve the trustee's breaching her fiduciary duty either through negligent or willful misconduct?

Id., at 976.

As to the first factor, BDO argues that the Barton Doctrine does not apply because the Rescission Action does not implicate the estates' assets. However, the argument is nonsensical - as discussed above, BDO seeks to sue the Trustee specifically because it intends to modify his rights in the pre-petition contracts (the Engagement Letters), which are indisputably property of the Debtors' estates. Because the Rescission Action involves property rights of these estates, and seeks to define and limit, if not eliminate entirely, the Trustee's rights which have their genesis under the Engagement Letters, it is clear that the first factor weighs against allowing the Rescission Action to be brought.

As to the second factor, BDO argues that the Rescission Action does not seek to name the Trustee as a defendant "based on the types of acts or omissions to which courts have traditionally prohibited suits against trustees outside the bankruptcy court". BDO is mistaken. The sole purpose of the Rescission Action is to limit and prevent the Trustee from pursuing any recoveries arising out of the contractual relationship set forth in the Engagement Letters. It is being brought solely in response to the Trustee's pending arbitration proceeding against BDO and is intended to target the Trustee in connection with his official acts under 11 U.S.C. § 704(a) in administering and collecting moneys for the estates. Moreover, as pointed out earlier, the Rescission

Action is a core proceeding because it implicates property rights of the estates and affects the administration of these estates. If successful, BDO's action would have a detrimental effect on creditors. Accordingly, the second factor also weighs against allowing the Rescission Action to proceed.

As to the third factor, BDO states, without argument or support, that there is no "quasi-judicial or judicial immunity" for the proposed claims against the Trustee. Not so since, as noted in the second factor, the Rescission Action is an attempt to collaterally attack the Trustee in connection with this official acts in furtherance of collecting money on behalf of the estates. This clearly "involve[s] the [Trustee] acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity." Id., at 976. Hence, the third factor weighs against allowing the Rescission Action to proceed.

As to the fourth and fifth factors, BDO appears not to be seeking a personal judgment against the Trustee, but is instead suing him solely in his fiduciary capacity. Likewise, BDO is not seeking to sue the Trustee for any alleged negligent or willful misconduct. Nevertheless, because the suit has targeted the Trustee in his official capacity and seeks to interfere with his official acts in administering the estates' assets, the Rescission Action should not be permitted to proceed against the Trustee outside of this Court or the arbitration proceeding.

Finally, throughout the Motions, BDO argues that the New York state courts are in a better position than this Court to adjudicate the claims in the proposed Rescission Action. This is wrong. The New York state courts cannot hear the proposed action as a matter of law. See BDO Seidman, LLP v. Kirschner, supra; Prima Paint, supra. Moreover, BDO's arguments rely on misrepresentations concerning the arbitration clause, including that the New York state courts must hear any appeal, which is false. Still further, this Court is fully capable of adjudicating the issues in the Rescission Action. This Court has had jurisdiction over these cases for over eighteen months, and it is certainly a better forum to litigate these issues, and there is no reason, other than forum

shopping, why BDO would opt to pursue an identical parallel proceeding in a different, more distant court.

Therefore, it is clear that the factors enumerated by the Ninth Circuit weigh heavily against permitting BDO to pursue the Rescission Action against the Trustee outside of the arbitration proceeding or this Court. The Rescission Action is undoubtedly intended to target and bind the Trustee and define and permanently alter his rights under the Engagement Letters. There simply is no reason, other than forum shopping, for BDO to pursue the contemplated action in New York state court.

## IV.

## **CONCLUSION**

Based on the foregoing, the Trustee respectfully requests that the Motions be denied in all respects, and for such other and further relief as the Court deems just and proper under the circumstances.

DATED: September 1, 2009

**Sulmeyer**Kupetz
A Professional Corporation

By: _____
Daniel A. Lev
Attorneys for Howard M. Ehrenberg
Chapter 7 Trustee

[DAL\LIT\528783.1 9/1/2009 (12:45 PM)]

15