1  Eric S. Pezold (#255657)
   SNELL & WILMER L.L.P.
2  600 Anton Boulevard, Suite 1400
   Costa Mesa, California 92626
3  Telephone:  (714) 427-7000
   Facsimile:  (714) 427-7799
4  E-Mail:     epezold@swlaw.com

5  Mark Benedict (Pro Hac Vice Application
   Pending)
6  Marshall Turner (Pro Hac Vice Application
   Pending)
7  Laura Toledo (Pro Hac Vice Application
   Pending)
8  Husch Blackwell Sanders LLP
   190 Carondelet Plaza, Suite 600
9  St. Louis, Missouri 63105
   Telephone: 314-480-1500
10 Facsimile: 314-480-1505
   Email:  mark.benedict@huschblackwell.com
11         marshall.turner@huschblackwell.com
           laura.toledo@huschblackwell.com
12
   Attorneys for Express Scripts, Inc.
13
            UNITED STATES BANKRUPTCY COURT
14
       CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION
15

16

17 In Re:                          Case No. 6:08-bk-10277-BB

18                                  Chapter 11

19 AXIUM INTERNATIONAL, INC.,       Jointly Administered and Substantively
                                    Consolidated with Case No. 2:08-bk-10376-
20        Debtors.                  BB

21                                  **MOTION TO COMPEL
                                    ABANDONMENT OF CERTAIN
22                                  CLAIMS PURSUANT TO SECTION 547
                                    OF THE BANKRUPTCY CODE;
23                                  MEMORANDUM OF POINTS AND
                                    AUTHORITIES**
24
                                    Hearing Information
25
                                    Date:     February 23, 2010
26                                  Time:     2:00 p.m.
                                    Location: Courtroom 1475
27                                            255 E. Temple Street
                                              Los Angeles, CA 90012
28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

11120990.1

Express Scripts, Inc. ("ESI"), a creditor of Diversity MSP Inc., d/b/a/ Ensemble Workforce Solutions, Inc. ("Ensemble"), one of the debtors and debtors-in-possession in the above-captioned jointly administered and substantively consolidated bankruptcy cases, hereby files its *Motion to Compel Abandonment of Certain Claims Pursuant to Section 547 of the Bankruptcy Code* (the "Motion"). As more fully set forth below, the Court should order the abandonment of the Chapter 7 Trustee's causes of action brought pursuant to section 547 of the Bankruptcy Code against certain staffing companies that provided services to ESI (the "Preference Actions") because they are of no value to Ensemble's estate. The Preference Actions have no value because: (i) the funds transferred by Ensemble, as ESI's agent, to the Staffing Companies were never property of Ensemble's estate; (ii) the transfers were not "to or for the benefit of a creditor;" and/or (iii) the transfers were not "for or on account of an antecedent debt."

The Motion is supported by the accompanying Memorandum of Points and Authorities, the *Declaration of Carl Waeckerle in Support of Express Scripts, Inc.'s Motion to Compel Abandonment of Certain Claims Pursuant to Section 547 of the Bankruptcy Code*, the *Declaration of Kenneth J. Quinn in Support of Express Scripts, Inc.'s Motion to Compel Abandonment of Certain Claims Pursuant to Section 547 of the Bankruptcy Code*,and all papers and pleadings of record in these cases.

DATED: January 26, 2010.          SNELL & WILMER L.L.P.


                              By   /s/ Eric S. Pezold
                                   Eric S. Pezold

                                   -and-

                                   Mark Benedict
                                   Marshall Turner
                                   Laura Toledo
                                   Husch Blackwell Sanders LLP

                                   Attorneys for Express Scripts, Inc.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   PARTIES AND JURISDICTION............................................................................2

III.  BACKGROUND ....................................................................................................2

    A.    General Background ....................................................................................2

    B.    The Master Service Agreement ..................................................................3

    C.    ESI's Contracts With Staffing Companies .................................................4

    D.    The Trustee's Preference Demands and ESI's Role....................................5

IV.   ARGUMENT AND REQUEST FOR RELIEF .......................................................6

    A.    The Court Should Order the Trustee to Abandon the Causes of
           Action Against the Staffing Companies Because They are
           Burdensome to the Estate and/or They Are Inconsequential Value
           and Benefit to the Estate ..............................................................................6

    B.    The Court Should Order the Preference Actions Abandoned Because
           the Trustee Cannot Make Out a Prima Facie Case Against the
           Staffing Companies.......................................................................................7

    C.    The Transfers of Funds By Ensemble to the Staffing Companies
           Were Not "transfers of an interest of the debtor in property" and
           Therefore Were Not Preferential Under Section 547 of the
           Bankruptcy Code .........................................................................................8

          1.    Ensemble Had No Interest in the Funds at Issue Because
               Ensemble was Merely ESI's Agent With Respect to the Funds.........8

          2.    The Funds Transferred From Ensemble to the Staffing
               Companies Were Not Property of Its Estate Because It Was
               Acting as ESI's Bailee With Respect to the Funds ..........................11

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

**TABLE OF CONTENTS**
**(continued)**

Page

3.    The Funds Transferred From Ensemble to the Staffing
Companies Were Not Property of Its Estate Because Ensemble
Held the Funds in Trust for ESI.......................................................13

D.    The Transfers Were Not "to or for the benefit of a creditor" and Thus
Were Not Preferential Pursuant to Section 547 of the Bankruptcy
Code ..............................................................................................16

E.    The Transfers Were Not Made on Account of an Antecedent Debt
and Thus Were Not Preferential Pursuant to Section 547 of the
Bankruptcy Code ..........................................................................17

V.    CONCLUSION ................................................................................18

# TABLE OF AUTHORITIES

**Page**

## U.S. SUPREME COURT

Begier v. I.R.S.
    496 U.S. 53 (1990) ..................................................................................................7, 13

Butner v. U.S.
    440 U.S. 48 (1979) .......................................................................................................8

## FEDERAL CASES

In re B.I. Fin. Servs. Group, Inc.
    854 F.2d 351 (9th Cir. 1988) ......................................................................................14

In re Cal. Trade Tech. Schs., Inc.
    923 F.2d 645 ...............................................................................................................13

In re Computrex, Inc.
    403 F.3d 807 (6th Cir. 2005) .............................................................12, 13, 17, 18

In re Coupon Clearing Serv., Inc.
    113 F.3d 1091 (9th Cir. 1997) ..............................................................................8, 13

In re Superior Stamp & Coin Co.
    223 F.3d 1004 (9th Cir. 2000) .....................................................................................7

In re Unicom Computer Corp.
    13 F.3d 321 (9th Cir. 1994) .................................................................................13, 14

## CALIFORNIA CASES

Del Costello v. State of Cal.
    185 Cal. Rptr. 585 (Cal. Ct. App. 1982).....................................................................14

Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.
    56 Cal. Rptr. 3d 177 (2007)..................................................................................10, 11

Ramey v. Myers
    245 P.2d 360 (Cal. Dist. Ct. App. 1952) ......................................................................9

Skopp v. Weaver
    16 Cal. 3d 432, 128 Cal. Rptr. 19, 546 P.2d 307 (1976)..............................................10

Workman v. San Diego
    267 Cal. App. 2d 36, 72 Cal. Rptr. 509 (4th Dist 1968) ..............................................10

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# TABLE OF AUTHORITIES
### (continued)

Page

## MISSOURI CASES

Glass v. Allied Van Lines, Inc.
   450 S.W.2d 217 (Mo. Ct. App. 1970) .......................................................................... 14

Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc.
   220 S.W.2d 350 (Mo. Ct. App. 2007) ............................................................................ 9

Sanderson v. Nunn
   259 S.W. 892 (Mo. Ct. App. 1924) .............................................................................. 12

The Bar Plan v. Cooper
   290 S.W.3d 788 (Mo. Ct. App. 2009) ............................................................................ 0


## FEDERAL STATUTES

11 U.S.C. § 541 ................................................................................................................. 7

11 U.S.C. § 547 ................................................................ 1, 2, 5, 7, 8, 11, 12, 16-18

11 U.S.C. § 547(b) ...................................................................................................... 7, 12

11 U.S.C. § 547(b)(1) ...................................................................................................... 16

11 U.S.C. § 547(b)(2) ............................................................................................ 12, 17, 18

11 U.S.C. § 554 ................................................................................................................. 2

11 U.S.C. § 554(b) ........................................................................................................... 6

28 U.S.C. § 1334 ............................................................................................................... 2

28 U.S.C. § 157(b)(2)(F) .................................................................................................. 2


## CALIFORNIA STATUTES

California Civil Code § 2223 ........................................................................................... 14

California Civil Code § 2224 ........................................................................................... 14

California Civil Code § 2295 ............................................................................................. 9

# TABLE OF AUTHORITIES
### (continued)

Page

## BANKRUPTCY CASES

In re Crouthamel Potato Chip Co.
  6 B.R. 501 (Bankr. E.D. Pa. 1980) ................................................................8

In re Golden Triangle Capital, Inc.
  171 B.R. 79 (B.A.P. 9th Cir. 1994) ......................................................14, 16

In re Lomantini
  252 B.R. 469 (Bankr. E.D. Mo. 2000) .............................................8, 18

In re Tap, Inc.
  52 B.R. 271 (Bankr. D. Mass. 1985) ...................................................15, 16

In re UDI Corp.
  301 B.R. 104 (Bankr. D. Mass. 2003) ..........................................................8

In re Viet Vu
  245 B.R. 644 (B.A.P. 9th Cir. 2000) ..........................................................6

## OTHER

Restatement (Second) of Agency § 12 ........................................................9, 10

Restatement (Second) of Agency § 13 ..........................................................10

Restatement (Second) of Agency § 14 ..........................................................10

Restatement (Second) of Agency § 398 ..........................................................9

Restatement (Third) of Agency § 8.12 ..........................................................9

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Chapter 7 Trustee (the "Trustee") sent demand letters and, in some circumstances, filed adversary proceedings regarding alleged preferential transfers made by Diversity MSP Inc., d/b/a/ Ensemble Workforce Solutions, Inc., one of the above-referenced debtors and debtors-in-possession ("Ensemble"), to a number of Staffing Companies (defined below) that provided temporary worker services to Express Scripts, Inc. ("ESI").

ESI entered into direct contractual relationships with the Staffing Companies, which companies provided their services directly to ESI. To manage payment to the Staffing Companies, Ensemble and ESI entered into an agreement pursuant to which Ensemble expressly agreed to act as ESI's limited agent with regard to consolidating weekly invoices from the Staffing Companies for services rendered to ESI, and receiving and disbursing ESI's funds for payment to the Staffing Companies. In connection with such services, Ensemble was entitled to a management fee of between 1.75% and 2.5% of billings, depending on the nature of services provided by the Staffing Companies to ESI. Ensemble received and collated all bills from the Staffing Companies, collected ESI funds from ESI, and then paid the Staffing Companies from ESI funds held by Ensemble.

The Chapter 7 Trustee seeks to avoid, as preferences, transfers of ESI's funds to the Staffing Companies within the 90 days before Ensemble's bankruptcy filing. As set forth in greater detail below, the Court should order the abandonment of the Trustee's causes of action, pursuant to section 547 of the Bankruptcy Code, against the Staffing Companies that provided services to ESI (the "Preference Actions") because they are of no value to the estate. The Preference Actions have no value because: (i) the funds transferred by Ensemble, as ESI's agent, to the Staffing Companies were never property of Ensemble's estate; (ii) the transfers were not "to or for the benefit of a creditor;" and/or (iii) the transfers were not "for or on account of an antecedent debt."

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

## II.

## PARTIES AND JURISDICTION

Axium International, Inc. and certain affiliated companies each filed voluntary petitions under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on January 9, 2008 (the "Petition Date"). Ensemble is among the debtor affiliates of Axium International, Inc. ESI is a Delaware corporation headquartered in St. Louis, Missouri, that provides services related to prescription drug benefits. In March 2006, ESI entered into an agreement with Ensemble to help it streamline ESI's dealings with numerous Staffing Companies that provided temporary workers for ESI, as described in detail below. Howard M. Ehrenberg is the duly-appointed Chapter 7 Trustee in this case.

The Court has jurisdiction over this Motion and the relief requested herein pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 547 and 554. This is a "core" proceeding within the contemplation of 28 U.S.C. § 157(b)(2)(F).

## III.

## BACKGROUND

### A.    General Background

ESI regularly hires temporary workers from a number of staffing companies.[1] Prior to March 2006, ESI had direct contractual relationships with staffing companies, and directly received and processed the invoices for services rendered by the staffing companies.[2]

To streamline its dealings with staffing companies, on March 1, 2006, ESI entered into a Master Service Agreement ("MSA") with Ensemble.[3] Pursuant to the MSA, Ensemble made available its billing and invoicing platform (the "Platform") to staffing companies engaged by ESI (each, a "Staffing Company," and together, the "Staffing

---

[1] *Declaration of Carl Waeckerle in Support of Express Scripts, Inc.'s Motion to Compel Abandonment of Certain Claims Pursuant to Section 547 of the Bankruptcy Code* (the "Waeckerle Declaration"), ¶ 9; *see also Declaration of Kenneth J. Quinn in Support of Express Scripts, Inc.'s Motion to Compel Abandonment of Certain Claims Pursuant to Section 547 of the Bankruptcy Code* (the "Quinn Declaration"), ¶ 7.
[2] *Waeckerle Declaration*, ¶ 10; *Quinn Declaration*, ¶ 8.
[3] *Waeckerle Declaration*, ¶ 11; *Quinn Declaration*, ¶ 9.

1    Companies"), as directed by ESI, and in return Ensemble collected a management fee for

2    the billing and invoicing services it provided to ESI pursuant to the MSA.[4]

3        In short, the Platform enabled the Staffing Companies to submit invoices for hours

4    worked to ESI for approval on a weekly basis.[5]  Once ESI approved the hours, Ensemble

5    would generate a single invoice for a particular week's work performed by the various

6    Staffing Companies and send the consolidated invoice to ESI for payment with an

7    additional management fee.[6]  Upon delivery of ESI funds by ESI to Ensemble, Ensemble

8    would, in turn, pay the individual Staffing Companies and retain its management fee from

9    the funds delivered by ESI.[7]  Ensemble would not pay any Staffing Company unless and

10    until it first received funds from ESI.[8]

11        As of the Petition Date, Ensemble had collated and delivered bills to ESI for

12    Staffing Companies' services to ESI in the approximate amount of $850,000 and ESI had

13    delivered payment for such Staffing Companies to Ensemble.[9]  However, Ensemble failed

14    to forward the amounts due to the Staffing Companies.[10]

15        ESI ultimately paid the Staffing Companies directly for the amounts due and

16    unpaid to them.[11]  In connection with the foregoing, ESI has filed two proofs of claim in

17    Ensemble's bankruptcy case, as follows:  (i) $849,204.01 on account of funds that were

18    transferred to Ensemble and that Ensemble failed to pay to the Staffing Companies; and

19    (ii) $776,131.89 based on amounts that ESI had to pay to Staffing Companies because

20    Ensemble failed to transmit funds to Staffing Companies for services rendered to ESI.[12]

21    **B.**    **The Master Service Agreement**

22        Under the terms of the MSA, Ensemble agreed to "provide to ESI the management

23

24    [4] *Id.*
      [5] *Waeckerle Declaration*, ¶ 13.
25    [6] *Id.*
      [7] *Id.*, ¶ 14.
26    [8] *Id.*, ¶¶ 15, 16.
      [9] *Quinn Declaration*, ¶ 17.
27    [10] *Id.; see also* Proofs of Claim Nos. 1953 and 1954(the "Claims").  ESI requests that the
      Court take judicial notice of the filing of the Claims.
28    [11] *See* Claims.
      [12] *See* Claims.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

services related to ESI's use of Temporary Workers under the Program as outlined in the Statement of Work ('Schedule 1').[13]  At all times Ensemble was to "act as ESI's ***limited agent*** under the terms of [the MSA]" (emphasis added).[14]

Ensemble's obligations included (1) using its reasonable best efforts to provide independent temporary workers to ESI through ESI's contracts with Staffing Companies (the "Limited Agent Services"); or (2) with ESI's prior written request, contracting directly with and engaging independent staffing companies for ESI (the "Prime Contractor Services").[15]  However, the relationship between ESI and Ensemble was always based on the Limited Agent Services and never the Prime Contractor Services.[16]  Ensemble never engaged in any Prime Contractor Services on behalf of ESI.[17]

The Statement of Work, which is Schedule 1 to the MSA ("SOW") provides a rate schedule outlining ESI's payment obligations for the temporary worker services.[18]  ESI was obligated to pay the "Bill Rate," which is defined as the "aggregate amount charged to ESI for work performed by the Temporary Workers."[19]  ESI also agreed to reimburse reasonable costs incurred by Ensemble and the Temporary Workers under certain circumstances.[20]  Ensemble was entitled to a management fee of 1.75% of the total Bill Rates for certain office and administrative services provided by the Staffing Companies, and 2.5% of the total Bill Rates for information technology services provided by the Staffing Companies (together, the "Management Fee").[21]

## C.    ESI's Contracts With Staffing Companies

ESI entered into "Temporary Worker Staffing Services Agreements" (or similarly named agreements, referred to herein as the "Service Agreements") with each Staffing

---

[13] *Waeckerle Declaration*, ¶ 17; *Quinn Declaration*, ¶ 11.
[14] *Id.*
[15] *Waeckerle Declaration*, ¶ 18; *Quinn Declaration*, ¶ 12.
[16] *Id.*
[17] *Id.*
[18] *Quinn Declaration*, ¶ 13.
[19] *Id.*
[20] *Id.*
[21] *Id.*

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    Company.[22]  All of the agreements are governed by the laws of the State of Missouri.[23]

2        Pursuant to the terms of the Service Agreements, the Staffing Companies agreed to

3    perform temporary staffing services for ESI, and were advised that Ensemble was

4    managing ESI's Temporary Worker Program and acting as ESI's limited agent for those

5    purposes.[24]

6        The Service Agreements state that each Staffing Company agreed to use

7    Ensemble's web-based software for invoicing purposes.[25]  Ensemble was to submit to

8    ESI, on the Staffing Company's behalf, an invoice on a weekly basis for "applicable fees

9    and rates . . . based on those approved timesheets in the Ensemble Software."[26]

10        The Service Agreements specifically state that Ensemble is "not responsible for

11   any invoice payment(s) until and unless paid by ESI."[27]  Staffing Company requests for

12   reimbursement of expenses were also to be submitted through Ensemble's software,

13   approved by ESI, and invoiced on the Staffing Company's behalf by Ensemble.[28]  Except

14   in the event ESI assigned the Service Agreements to Ensemble, Ensemble was ESI's

15   "limited agent" for all purposes.[29]

16        No ESI Service Agreements were ever assigned to Ensemble.[30]

17   **D.**    **The Trustee's Preference Demands and ESI's Role**

18        The Trustee sent demand letters to a number of Staffing Companies indicating that

19   he anticipates pursuing causes of action against them pursuant to section 547 of the

20   Bankruptcy Code for transfers made by Ensemble to the Staffing Companies within 90

21   days prior to the Petition Date.[31]

22        Because of ESI's direct contractual relationship with the Staffing Companies, ESI

23

24   [22] *Waeckerle Declaration*, ¶ 23; *Quinn Declaration*, ¶ 14.
     [23] *See* Exhibit C to the Waeckerle Declaration and the Quinn Declaration.
25   [24] *Waeckerle Declaration*, ¶ 24; *Quinn Declaration*, ¶ 15.
     [25] *See* Exhibit C to the Waeckerle Declaration and the Quinn Declaration
26   [26] *Id.*
     [27] *Id.*
27   [28] *Id.*
     [29] *Waeckerle Declaration*, ¶ 24; *Quinn Declaration*, ¶ 15.
28   [30] Quinn Declaration, ¶ 16.
     [31] Quinn Declaration, ¶ 18.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

11120990.1

- 5 -

1    may be subject to claims made by the Staffing Companies for any funds recovered by the

2    Trustee, if any.  As such, ESI has agreed to indemnify eighteen (18) Staffing Companies.

3    Sixteen (16) of the eighteen (18) Staffing Companies provided services only to ESI

4    through the Platform.  Two (2) of the eighteen (18) Staffing Companies provided services

5    to multiple end users, including ESI, through the Platform.  ESI may enter into additional

6    indemnification agreements with other Staffing Companies.

**IV.**

**ARGUMENT AND REQUEST FOR RELIEF**

9    The Trustee should be required to abandon all actual and potential causes of action

10    against the Staffing Companies based upon payment for services rendered to ESI.  Such

11    causes of action have no value to the estate.

12    **A.**    **The Court Should Order the Trustee to Abandon the Causes of Action**

13    **Against the Staffing Companies Because They are Burdensome to the Estate**

14    **and/or They Are Inconsequential Value and Benefit to the Estate.**

15    Section 554(b) of the Bankruptcy Code states:  "On request of a party in interest

16    and after notice and hearing, the court may order the trustee to abandon any property of

17    the estate that is burdensome to the estate or that is of inconsequential value and benefit to

18    the estate."  11 U.S.C. § 554(b).  Abandonment is appropriate if (1) the property is

19    burdensome to the estate, or (2) the property is of inconsequential value and benefit to the

20    estate.  See In re Viet Vu, 245 B.R. 644, 647 (B.A.P. 9th Cir. 2000).  Abandonment is a

21    remedy available to help creditors "by assuring some benefit in the administration of each

22    asset."  Id.

23    For the reasons set forth herein, because the transfers subject to the Preference

24    Actions were not property of Ensemble prior to the bankruptcy proceedings, any

25    Preference Actions to recover those transfers would not concern property of the estate.

26    Indeed, to the extent the payments were made not from property of the estate, prosecution

27    of the Preference Actions is not proper and could give rise to liability to the estate.

28    Therefore, the Trustee's pursuit of preference claims would be of inconsequential value to

Snell & Wilmer
━━━ L.L.P. ━━━
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

11120990.1

1    the estate because the Trustee could not recover assets for the estate, and would

2    furthermore be burdensome to the estate to the extent the Trustee expended estate

3    resources to pursue fruitless preference claims.

4    **B.**    **The Court Should Order the Preference Actions Abandoned Because the**

5    **Trustee Cannot Make Out a _Prima Facie_ Case Against the Staffing**

6    **Companies.**

7    Section 547(b) of the Bankruptcy Code provides, in relevant part:

8    Except as provided in subsections (c) and (i) of this
     section, the trustee may avoid any transfer of an
9    interest of the debtor in property--
     (1)    to or for the benefit of a creditor;
10   (2)    for or on account of an antecedent debt owed by
            the debtor before such transfer was made;
11   (3)    made while the debtor was insolvent;
     (4)    made--
12          (A)    on or within 90 days before the date of
                   the filing of the petition; or
13          (B)    between ninety days and one year
                   before the date of the filing of the
14                 petition, if such creditor at the time of
                   such transfer was an insider; and
15   (5)    that enables such creditor to receive more than
            such creditor would receive if--
16          (A)    the case were a case under chapter 7 of
                   this title;
17
            (B)    the transfer had not been made; and
18          (C)    such creditor received payment of such
                   debt to the extent provided by the
19                 provisions of this title.

20

21    Thus, a trustee may avoid as preferential only interests "of the debtor" in property,

22   which is commonly understood as property of the debtor's estate as defined by section

23   541 of the Bankruptcy Code. <u>See</u> 11 U.S.C. §§ 547(b), 541; <u>Begier v. I.R.S.</u>, 496 U.S. 53,

24   58 & n.3 (1990). As detailed below, the transfers were not property of Ensemble. The

25   Staffing Companies were paid from ESI's funds.

26    Furthermore, to be avoided as a preference, a transfer must have been to or for the

27   benefit of a creditor, and made on account of an antecedent debt. <u>See</u> 11 U.S.C. § 547(b);

28   <u>In re Superior Stamp & Coin Co.</u>, 223 F.3d 1004, 1007 (9th Cir. 2000). As detailed

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

11120990.1

- 7 -

1    below, the transfers were not to creditors of Ensemble, nor did Ensemble owe an

2    antecedent debt to the Staffing Companies.

3    **C.**    **The Transfers of Funds By Ensemble to the Staffing Companies Were Not**

4    **"transfers of an interest of the debtor in property" and Therefore Were Not**

5    **Preferential Under Section 547 of the Bankruptcy Code.**

6    The nature and extent of a debtor's interest in property is determined by state law,

7    and a bankruptcy estate has no greater rights in property than those held by the debtor

8    prior to the bankruptcy.  See Butner v. U.S., 440 U.S. 48, 55 (1979); In re Coupon

9    Clearing Serv., Inc., 113 F.3d 1091, 1099 (9th Cir. 1997); In re UDI Corp., 301 B.R. 104,

10    111 (Bankr. D. Mass. 2003).

11    The overriding question with respect to the Preference Actions is whether the funds

12    Ensemble paid to the Staffing Companies constituted Ensemble's "property" prior to the

13    Petition Date, such that transfers from Ensemble to the Staffing Companies within 90 days

14    of the Petition Date are avoidable under section 547 of the Bankruptcy Code.  For the

15    various reasons raised herein, ESI submits that the answer to this question is "no."

16    **1.**    **Ensemble Had No Interest in the Funds at Issue Because Ensemble was**

17    **Merely ESI's Agent With Respect to the Funds.**

18    A transfer of property by a debtor is not a transfer of property of the debtor if there

19    exists "a true agency relationship . . . ."  In re Crouthamel Potato Chip Co., 6 B.R. 501,

20    507 (Bankr. E.D. Pa. 1980).  This is true under applicable Missouri and California law

21    because an agent does not acquire ownership of property held for the principal.[32]  Under

22    Missouri law an agent receiving or holding money on behalf of the principal has a duty

23    not to deal with the money such that it appears to belong to the agent.  In re Lomantini,

24    252 B.R. 469, 476 (Bankr. E.D. Mo. 2000) (stating that although an agent's receipt of

25    money may be lawful, if the agent uses the money as his own, such conduct may

26    constitute conversion).  Similarly, under California law, "in the absence of special

27    ———————————

28    [32] The underlying contracts are governed by Missouri law.  As detailed herein, the results are the same under either Missouri or California law.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    circumstances, moneys received by one in the capacity of agent are not his, and the law

2    implies a promise to pay them to the principal on demand." Ramey v. Myers, 245 P.2d

3    360, 364 (Cal. Dist. Ct. App. 1952).

4    　　　　The Restatement (Third) of Agency states:

5    　　　　　　An agent has a duty, subject to any agreement with the
　　　　　　principal,
6    　　　　　　(1) not to deal with the principal's property so that it
　　　　　　appears to be the agent's property;
7    　　　　　　(2) not to mingle the principal's property with anyone
　　　　　　else's; and
8    　　　　　　(3) to keep and render accounts to the principal of
　　　　　　money or other property received or paid out on the
9    　　　　　　principal's account.

10    Rest. 3d Agency § 8.12.[33]  Therefore, if Ensemble was ESI's agent then the transfers at

11    issue were not property of Ensemble's estate.

12    　　　　Ensemble was ESI's agent under both Missouri and California law because the

13    MSA creates an express agency relationship.  Pursuant to Missouri law, to establish a

14    principal/agent relationship, it must be shown that: (i) the principal consented, expressly

15    or impliedly, to the agent acting on the principal's behalf, and (ii) that the agent was

16    subject to the principal's control.  See The Bar Plan v. Cooper, 290 S.W.3d 788, 792 (Mo.

17    Ct. App. 2009).  "Agency is the fiduciary relation which results from the manifestation of

18    consent by one person, a principal, to another, an agent, that the agent shall act on the

19    principal's behalf and subject to the principal's control, and consent by the agent so to

20    act."  Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc., 220 S.W.2d 350, 354 (Mo. Ct.

21    App. 2007) (internal citations and marks omitted).  Actual authority, which is the power

22    of the agent to affect the legal relations of the principal, may be expressed or implied.  Id.

23    at 355.

24    　　　　Similarly, under California law, an agent is one who represents another person,

25    called the principal, in dealings with third persons.  See Cal. Civ. Code § 2295.  Agency is

26

27    　[33] "Unless otherwise agreed, an agent receiving or holding things on behalf of the
　principal is subject to a duty to the principal not to receive or deal with them so that they
28    will appear to be his own and not so to mingle them with his own things as to destroy their
　identity."  See Rest. 2d Agency § 398, p.228.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

11120990.1

- 9 -

1    the relationship that results from the act of the principal authorizing the agent to conduct

2    one or more transactions with one or more third persons.  <u>Workman v. San Diego</u>, 267

3    Cal. App. 2d 36, 72 Cal. Rptr. 509 (4th Dist 1968); <u>Skopp v. Weaver</u>, 16 Cal. 3d 432, 128

4    Cal. Rptr. 19, 546 P.2d 307 (1976) (holding that discretion is not essential to creation of

5    agency relationship).

6         As described below, an agency relationship may be created by the express terms of

7    a written contract.  In <u>Garlock Sealing Technologies, LLC v. NAK Sealing Technologies</u>

8    <u>Corp.</u>, the California Court of Appeals considered whether the trial court had abused its

9    discretion in ruling that an agency relationship existed between a manufacturer and an

10   importer that introduced the manufacturer to a U.S. based customer.  56 Cal. Rptr. 3d 177,

11   200 (2007).  The manufacturer would ship to the importer, who would receive the

12   product, clear customs, and then ship to the U.S. customer.  <u>Id.</u> at 198.  When the

13   customer raised issues regarding the implied warranty of merchantability, the importer

14   argued that it had acted as the manufacturer's agent and should be indemnified by the

15   manufacturer with regard to product liability issues.  The court in <u>Garlock</u> looked to the

16   Restatement (Second) of Agency for the factors to consider in determining whether an

17   actual agency relationship exists, including whether the agent holds power to alter the

18   legal relations between the principal and third parties, whether the agent is a fiduciary

19   with respect to matters within the scope of the agency, and whether the principal has the

20   right to control the agent's conduct.  <u>Id.</u> at 199-201; Rest. 2d Agency §§ 12, 13, 14.  The

21   court held that there was ample evidence that the manufacturer and importer had entered

22   into an agreement creating an express agency relationship, and that the evidence

23   established that the importer's duty was to act primarily for the benefit of the

24   manufacturer and not itself.  <u>Id.</u> at 201.  The court also emphasized that the agent was not

25   required to forward payment to the principal until it, as agent, had been paid.  <u>Id.</u> at 200,

26   n.14.  Therefore, the court found an agency relationship existed.  <u>Id.</u>

27         This case is analogous to <u>Garlock</u> because an agency relationship was expressly

28   contemplated and carried out.  Here the MSA, SOW, and Service Agreements all provide

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

11120990.1

1    that Ensemble shall be the "limited agent" of ESI for purposes of managing ESI's

2    temporary worker programs.  In particular, in both Garlock and this case, the agent was

3    not required to forward payment to the principal until it, as agent, had been paid.

4    Ensemble only paid Staffing Companies following receipt of funds from ESI and it had no

5    obligation to use its funds to pay ESI's Staffing Companies.  See Garlock, 56 Cal. Rptr.

6    3d at 20 n.14.  Ensemble also had no right to the funds that were to be paid to the Staffing

7    Companies.  Ensemble's sole right was to recover the Management Fee in return for

8    providing billing services.

9         Furthermore, Ensemble was not a party to the contracts between the Staffing

10    Companies and ESI.  Additionally, the course of dealing between the parties reflects that

11    an actual principal/agent relationship also existed.

12         The ESI funds transferred from ESI to Ensemble, and then from Ensemble to the

13    Staffing Companies, were not property of the bankruptcy estate and cannot be the basis

14    for establishing the Staffing Companies' preference liability pursuant to section 547 of the

15    Bankruptcy Code.

16    **2.    The Funds Transferred From Ensemble to the Staffing Companies**

17    **        Were Not Property of Its Estate Because It Was Acting as ESI's Bailee**

18    **        With Respect to the Funds.**

19         If this Court were to rule that a principal/agent relationship did not exist between

20    ESI and Ensemble, then the relationship should be characterized as a bailor/bailee

21    relationship; i.e., ESI, as bailor, directed Ensemble, as bailee, to take possession of ESI's

22    money and disburse it to ESI's creditors.  "Bailment is a contract resulting from the

23    delivery of goods by the bailor to the bailee on condition that they either be restored to the

24    bailor or delivered to someone designated by the bailor, according to the bailor's

25    directions, when the purposes for which the goods are bailed have been answered…and a

26    bailee who makes delivery of the goods to a third person without the assent of the bailor,

27    does so at his peril."  Glass v. Allied Van Lines, Inc., 450 S.W.2d 217, 220 (Mo. Ct. App.

28    1970).  If a bailee exercises unauthorized dominion over bailed property, the bailee is

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    guilty of conversion. Sanderson v. Nunn, 259 S.W. 892, 894 (Mo. Ct. App. 1924).

2        In Computrex, the United States Court of Appeals for the Sixth Circuit considered

3    whether a bailor/bailee relationship existed in a situation similar to the instant case, where

4    a bankrupt debtor assisted with the processing and payment of freight charges for a

5    manufacturer and distributor of corrugated metal and plastic pipes. See In re Computrex,

6    Inc., 403 F.3d 807 (6th Cir. 2005). The relationship between the debtor and the

7    manufacturer was governed by an agreement pursuant to which the debtor was to receive

8    bills from the manufacturer's freight carriers, process the bills, and send an invoice to the

9    manufacturer at the end of each week. The following Monday, the manufacturer would

10   wire the debtor enough funds to cover the carriers' charges, plus a fee for the debtor, and

11   the next day the debtor was to issue checks to the carriers. Id. at 809. The debtor made

12   over $4 million in payments to the manufacturer's carriers in the 90 days before the filing

13   of the bankruptcy case. The trustee brought an action against the manufacturer under

14   section 547 of the Bankruptcy Code. Id. The Bankruptcy Court dismissed the action,

15   and, on appeal, the Sixth Circuit affirmed and held "the funds received from [the

16   manufacturer] and disbursed to [the manufacturer's] carriers were not part of the debtor's

17   estate, as the debtor was merely a disbursing agent which did not exercise sufficient

18   control and dominion over the funds for them to constitute part of its estate." Id. at 813.

19       Computrex explained that "before a trustee can establish a preference claim, he

20   must establish that the alleged preferential transfer was a property interest of the debtor."

21   403 F.3d at 810 (citing 11 U.S.C. § 547(b)). To determine whether the funds were

22   property of the estate, the Court of Appeals considered whether the debtor exercised

23   sufficient control and dominion over the funds, and concluded that the debtor was merely

24   a bailee that "lacked any property interest in [the manufacturer's] money." Id. at 812. In

25   support of its conclusion, Computrex noted that the parties' relationship was "strictly

26   defined" by their agreement, the agreement did not anticipate that the debtor would have

27   any dominion or control over the funds between the time they were wired from the

28   manufacturer and disbursed to the carriers, and the agreement did not anticipate that the

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

11120990.1

- 12 -

debtor would put the funds to any use other than as designated in the agreement. Id. at
811. As such, the debtor was in the position of a bailee, entrusted with a possessory
interest in the manufacturer's funds, but lacking any legal or equitable interest in them.
Id. at 812.

Computrex is directly on point in this case. The relationship between ESI and
Ensemble was strictly defined by their contracts, and those agreements do not contemplate
that Ensemble would exercise any dominion or control over ESI's funds before Ensemble
forwarded the funds to the Staffing Companies. Ensemble's sole interest in the funds was
the right to retain a small percentage, not exceeding 2.5 %, of the funds as a Management
Fee. The essence of Ensemble's role was that of a bailee: it was to hold ESI's money and
disburse it to the Staffing Companies on behalf of and at the direction of ESI. There is no
basis for Ensemble to claim a legal interest in the funds.

The Preference Actions are thus not viable because the ESI funds transferred to the
Staffing Companies were bailments and were not property of the estate. Therefore, the
Court should enter an order requiring the Trustee to abandon the Preference Actions.

**3.      The Funds Transferred From Ensemble to the Staffing Companies
Were Not Property of Its Estate Because Ensemble Held the Funds in
Trust for ESI.**

If the Court were to rule that the relationship between ESI and Ensemble is not a
principal/agent or bailor/bailee relationship, then the ESI funds that ESI transferred to
Ensemble were held by Ensemble pursuant to a constructive trust. Property held by a
debtor for another by virtue of an express or constructive trust is not property of the estate.
See In re Begier, 496 U.S. at 59; In re Cal. Trade Tech. Schs., Inc., 923 F.2d at 645-46
("[b]ankruptcy law does not view property held in trust by Debtor as property of the estate
available for general creditors"); In re Coupon Clearing Serv., 113 F.3d at 1099 (applying
rule to constructive trusts); In re Unicom Computer Corp., 13 F.3d 321, 324 (9th Cir.
1994). Property held in trust should be turned over to the holder of the beneficial interest.
See In re Cal. Trade Tech. Schs., Inc., 923 F.2d at 646 n.6. Whether property is held in

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    trust is determined according to the law of the state where the trust *res* is located. Id. at

2    646.

3    An express trust is created when the parties intend to "set aside property under the

4    stewardship of a trustee for the benefit of the beneficiary." Del Costello v. State of Cal.,

5    185 Cal. Rptr. 585, 586 (Cal. Ct. App. 1982). An express trust creates a fiduciary

6    relationship. Id. A constructive trust, by contrast, does not establish a fiduciary

7    relationship, and is imposed by the court, to prevent unjust enrichment by the party in

8    possession of property. Id. In California, a court may impose a constructive trust on a

9    debtor that negligently or wrongfully detains property of another. See Cal. Civ. Code §§

10    2223 ("one who wrongfully detains a thing is an involuntary trustee thereof, for the

11    benefit of the owner"), and 2224 ("One who gains a thing by fraud, accident, mistake,

12    undue influence, the violation of a trust, or other wrongful act, is, unless he or she had

13    some other and better right thereto, an involuntary trustee of the thing gained, for the

14    benefit of the person who would otherwise have had it."); In re Unicom Computer Corp.,

15    13 F.3d at 325.

16    In this case, an express trust was intended between ESI and Ensemble, in that the

17    parties agreed that Ensemble was to hold ESI's funds in trust, to be distributed to the

18    Staffing Companies as the trust beneficiaries.

19    An express trust requires (1) the creation of a trust *res*, i.e., some specific property

20    that is set aside by the trustor; and (2) acknowledgement of the trust by the trustee, by

21    words or acts indicating his acceptance of the trust or acknowledgement of the trust's

22    existence. See Del Costello, 185 Cal. Rptr. at 586 n.7. The parties' intentions are

23    paramount to the creation of an express trust. Id. at 587. See also In re B.I. Fin. Servs.

24    Group, Inc., 854 F.2d 351, 359 (9th Cir. 1988) (express trust is created under California

25    law "by acts or words of the trustor which indicate (1) an intention to create a trust and

26    (2) the subject, purpose and beneficiary of the trust"); In re Golden Triangle Capital, Inc.,

27    171 B.R. 79 (B.A.P. 9th Cir. 1994).

28    In Golden Triangle, the Ninth Circuit BAP held that an express trust existed

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

11120990.1

- 14 -

1   between the debtor (a loan servicing agent), a lender, and a borrower. See 171 B.R. at 80.

2   The lender transmitted a check for $95,000 to the debtor, who deposited the check in its

3   general account. The debtor intended and was expected to transfer the funds to the

4   borrower, minus a servicing fee, but before it did so, the funds were seized and frozen.

5   After the debtor filed bankruptcy, the lender filed a declaratory judgment action to

6   determine its entitlement to the funds. Id. at 80-81. The Ninth Circuit BAP concluded

7   that an express trust was intended by the parties, in that the parties did not dispute that

8   only legal title was meant to pass to the debtor, and regardless of whether a trust existed, it

9   was clear that the funds were never property of the estate because the debtor was only a

10  conduit. Id. at 83. The court pointed out that the debtor never had rights to the funds

11  except for its nominal fee for servicing the loan, and the parties never intended the lender

12  to enter into a creditor relationship with the debtor. The case was remanded, however, to

13  address the traceability of the funds. Id.

14          Similarly, in In re Tap, Inc., 52 B.R. 271 (Bankr. D. Mass. 1985), the bankruptcy

15  court applied trust principles in a case involving an action to recover funds paid by an

16  employer to a debtor that was in the business of processing employee payrolls and

17  calculating and paying payroll taxes for its customers. The court found that an express

18  trust existed based on the following "expectations and circumstances": (1) the plaintiff

19  had paid money to the debtor for twenty-one (21) years "for the express purpose of paying

20  third parties," which was typical of the debtor's relationship with its other customers;

21  (2) the plaintiff did not consent to the debtor's use of funds for its own purposes; and

22  (3) the plaintiff "relied upon the debtor's function as a transmitter of the funds and not on

23  any expectation of the debtor's solvency." Id. at 276. The court denied that the

24  commingling of funds in the debtor's general account dictated the finding that no trust

25  relationship existed, although the court acknowledged that a tracing problem arises when

26  funds are commingled. Id. at 277.

27          In the instant case, the circumstances of the parties' relationships, including the

28  terms of the agreements and the parties' actions consistent therewith, indicate that an

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   express trust existed in which ESI was the trustor, the Ensemble was the trustee, and the

2   Staffing Companies were the beneficiaries. Although the written agreements do not use

3   the words "trust," they do refer to Ensemble as ESI's agent, and the terms and

4   circumstances establish that the parties intended that (i) ESI would set aside specific

5   funds, (ii) Ensemble would take possession of the funds but would not be entitled to use

6   them except as directed by ESI under the terms of the agreements, and (iii) the funds

7   would be disbursed to the beneficiaries according to the terms of the agreements. As in

8   Golden Triangle and Tap, ESI forwarded funds to Ensemble with the express purpose that

9   Ensemble would pay the funds over to third parties, and never consented to Ensemble's

10  use of the funds for any other purpose (except to the extent Ensemble was allowed to

11  retain a Management Fee), and Ensemble's solvency should not have been relevant

12  because its job was merely to transmit ESI's funds to the Staffing Companies. Under the

13  circumstances, the fact that Ensemble commingled the funds should not affect the

14  conclusion that a trust existed.

15      Based on the foregoing, the funds ESI transferred to Ensemble were held in express

16  trust. Accordingly, Ensemble's transfers of the trust funds to the Staffing Companies

17  were not transfers of Ensemble's property and such transfers should not form the basis for

18  Preference Actions pursuant to section 547 of the Bankruptcy Code.

19      Under any of the foregoing three bodies of law – agency, bailment, or constructive

20  trust – the ESI funds, which ESI transferred to Ensemble for payment for the services

21  rendered by the Staffing Companies to ESI, are not property of Ensemble's estate.

22  Accordingly, the Court should hold that the Preference Actions, whether or not already

23  filed, have no value to the estate and should order the Trustee to abandon all such actions.

24  **D.    The Transfers Were Not "to or for the benefit of a creditor" and Thus Were**

25  **Not Preferential Pursuant to Section 547 of the Bankruptcy Code.**

26      Pursuant to section 547(b)(1) of the Bankruptcy Code, to be avoided as a

27  preference, a transfer must have been to or for the benefit of a creditor.

28      Ensemble was not in contractual privity with the Staffing Companies and was

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  never indebted to them.  Rather, the Staffing Companies' direct debtor/creditor

2  relationship was with ESI.  Accordingly, the Staffing Companies are creditors of ESI, and

3  Ensemble was merely an agent of ESI for payment to ESI's creditors, not its own.

4  Therefore, Ensemble did not transfer any funds to or for the benefit of a creditor, and there

5  is no basis for a preference claim.

6  **E.    The Transfers Were Not Made on Account of an Antecedent Debt and Thus**

7  **Were Not Preferential Pursuant to Section 547 of the Bankruptcy Code.**

8  Pursuant to section 547(b)(2) of the Bankruptcy Code, to be avoided as a

9  preference, a transfer must have been "for or on account of an antecedent debt owed by

10  the debtor before such transfer was made."

11  Computrex provides insight in to whether the antecedent debt prong is satisfied.

12  As previously noted, Computrex's holding was that there were no preferential transfers

13  because the funds transferred were not property of the debtor's estate.  However, in the

14  first footnote of the opinion, the Sixth Circuit Court of Appeals emphasized that the

15  debtor's payments to the manufacturer's carriers were:

16      not made on account of an antecedent debt owed on
   behalf of the Debtor . . . Although the payment
17      agreement obligated the Debtor to complete the
   transaction by disbursing Contech's money to its
18      freight carriers, the Debtor disbursed this money not
   because of "an antecedent debt" it owed to Contech,
19      but because of its contractual promise to Contech for
   which the Debtor had been paid. . . . As such, under
20      the Code, a debt arises only when the obligation comes
   due, and therefore must be paid out of the debtor's
21      assets.  Because the Debtor transferred the funds to
   Contech's creditors, no other obligation came due that
22      the Debtor was required to satisfy.

23  403 F.3d at 810 n. 1.

24  The reason no antecedent debt existed was because the debtor had a contractual

25  obligation to disburse those funds for which it had been previously paid.  Id.  "[U]nder the

26  Code, a debt arises only when the obligation comes due, and therefore must be paid out of

27  the debtor's assets."  Id.  But in the Computrex debtor's case, "no other obligation came

28  due that the Debtor was required to satisfy" when it transferred the funds.  Id.; see also

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   Lomantini, 252 B.R. at 477 (money belonging to a principal in the hands of an agent is not

2   a 'debt' owed by the agent to the principal).  Indeed, after the debtor received the funds

3   (including its commission), an obligation would have only arisen if it had misappropriated

4   the funds and/or failed to transfer the funds as required.

5        Based upon the known facts, Computrex appears to be squarely on point with the

6   facts involving Ensemble.  The funds that are the subject of the Preference Actions were

7   transferred by Ensemble to the Staffing Companies in accordance with the terms of the

8   MSA.  Accordingly no debt arose with regard to the payments to the Staffing Companies

9   and, under Computrex, the Trustee cannot establish that section 547(b)(2) has been

10  satisfied.

### V.

### CONCLUSION

13       WHEREFORE, Express Scripts, Inc., respectfully requests that this Court enter an

14  Order compelling the Trustee to abandon all existing and potential Preference Actions

15  against the Staffing Companies listed on Exhibit A, because they are of no value and

16  benefit to the estate and pursuit of the Preference Actions would be burdensome to the

17  estate.  ESI also seeks such other and further relief as the Court deems just and

18  appropriate under the circumstances.

20  Dated: January 26, 2010                    SNELL & WILMER L.L.P.

22                                             By: /s/ Eric S. Pezold
                                                   Eric S. Pezold

23                                                 -and-

24                                                 Mark Benedict
25                                                 Marshall Turner
                                                   Laura Toledo
26                                                 Husch Blackwell Sanders LLP

27                                                 Attorneys for Express Scripts, Inc.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

| In re:<br>AXIUM INTERNATIONAL, INC., | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 6:08-bk-10277-BB |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Snell & Wilmer L.L.P.
600 Anton Blvd., Ste. 1400
Costa Mesa, CA 92626

A true and correct copy of the foregoing document described _____ MOTION TO COMPEL ABANDONMENT OF CERTAIN CLAIMS PURUSANT TO SECTION 547 OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS AND AUTHORITIES _____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 26, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On January 26, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Sheri A. Bluebond
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA  90012-3300

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Date  January 26, 2010_      _Type Name:_  Rudi Wilson      _Signature:_  /s/ Rudi Wilson

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_January 2009_

**F 9013-3.1**

| In re:<br>AXIUM INTERNATIONAL, INC.,<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 6:08-bk-10277-BB |
| --- | --- |

**CONTINUATION FROM SECTION I:** TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF

- Franklin C Adams    franklin.adams@bbklaw.com,
  arthur.johnston@bbklaw.com;lisa.spencer@bbklaw.com;bknotices@bbklaw.com
- Andrew K Alper    aalper@frandzel.com, efiling@frandzel.com;ekidder@frandzel.com
- Paul S Arrow    parrow@buchalter.com, ifs_filing@buchalter.com
- Elizabeth Berke-Dreyfuss    edreyfuss@wendel.com
- Ann Bloetscher    abloetsc@ford.com
- Sandor T Boxer    tedb@tedboxer.com
- Erin N Brady    enbrady@jonesday.com
- Hall Brehme    crios@purdybrehme.com
- Alan F Broidy    sherrie@alanbroidy.com, afbroidy@ix.netcom.com
- Bradley E Brook    bbrook@bbrooklaw.com, jimmy@bbrooklaw.com
- Gillian N Brown    gbrown@pszjlaw.com, gbrown@pszjlaw.com
- Michael E Busch    michael.busch@fnf.com
- Thomas H Casey    msalustro@tomcaseylaw.com
- Sara Chenetz    chenetz@blankrome.com
- Shawn M Christianson    cmcintire@buchalter.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com
- Theodore A Cohen    tcohen@sheppardmullin.com
- Jonathan B Cole    jcole@nemecek-cole.com
- Enid M Colson    emc@dgdk.com, ecolson@dgdk.com
- Jon L Dalberg    jdalberg@lgbfirm.com, mprokocki@lgbfirm.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Henry S David    hdavid@dskllp.com, hdavid@swlaw.com
- Peter A Davidson    pdavidson@mdfslaw.com
- Asheley G Dean    agdean@hhlaw.com
- Howard M Ehrenberg    ehrenbergtrustee@sulmeyerlaw.com,
  ca25@ecfcbis.com;hmehrenberg@ecf.epiqsystems.com
- Joseph A Eisenberg    jae@jmbm.com
- Christina Erickson    cerickson@richardsonpatel.com
- Richard W Esterkin    resterkin@morganlewis.com
- Lisa Hill Fenning    Lisa.Fenning@aporter.com, Jean.Kellett@aporter.com
- Wayne S Flick    wayne.s.flick@lw.com, colleen.rico@lw.com
- Joseph D Frank    jfrank@fgllp.com
- J Rudy Freeman    rfreeman@linerlaw.com, cjacobo@linerlaw.com
- Anthony A Friedman    aaf@lnbrb.com
- Ellen A Friedman    mmyles@friedumspring.com
- Ellyn S Garofalo    egarofalo@linerlaw.com
- Daniel H Gill    ecf@ebg-law.com, dgill@ebg-law.com
- Michael J Glenn    mglenn@thedonovanoffices.com
- Arthur Goldstein    agoldstein@tnsj-law.com
- David B Golubchik    dbg@lnbrb.com
- Sonya M Grahl    sgrahl1@ford.com
- Irving M Gross    img@lnbrb.com
- Steven T Gubner    sgubner@ebg-law.com, ecf@ebg-law.com
- Peter J Gurfein    pgurfein@akingump.com
- Joseph G Harraka    jgharraka@beckermeisel.com, bhbecker@beckermeisel.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- D Edward Hays    ehays@marshackhays.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                         **F 9013-3.1**

| In re:<br>AXIUM INTERNATIONAL, INC., | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 6:08-bk-10277-BB |

- Jeffery D Hermann    jhermann@orrick.com
- Michael J Heyman    michael.heyman@klgates.com
- Whitman L Holt    wholt@stutman.com
- Leslie R Horowitz    lhorowitz@clarktrev.com
- Mark D Houle    mark.houle@pillsburylaw.com
- Marsha A Houston    mhouston@reedsmith.com
- James K T Hunter    jhunter@pszyjw.com
- Paul Jasper    pjasper@dl.com
- Peter F Jazayeri    pjazayeri@ecjlaw.com, pjazayeri@ecjlaw.com
- James O Johnston    johnstonj@hbdlawyers.com
- John J Jolley    jay.jolley@kutakrock.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- David C Kelly    dkelly@prklaw.com
- John H Kim    jkim@cookseylaw.com
- John W Kim    jkim@nossaman.com
- Jonathan J Kim    jkim@pszjlaw.com, jkim@pszjlaw.com
- Joseph A Kohanski    jkohanski@bushquinonez.com
- Jeffrey A Krieger    jkrieger@ggfirm.com
- Ian Landsberg    ilandsberg@lm-lawyers.com, bgomelsky@landsberg-law.com;rbenitez@landsberg-law.com
- Daniel A Lev    dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Joy E Levy    ecf@ebg-law.com
- Adam A Lewis    alewis@mofo.com
- Michael S Lurey    michael.lurey@lw.com, colleen.rico@lw.com
- Josefina F McEvoy    josefina.mcevoy@klgates.com, jparrott@foxrothschild.com
- C John M Melissinos    jmelissinos@andrewskurth.com, jreinglass@rutterhobbs.com
- Darrel C Menthe    dmenthe@mcguirewoods.com
- Hal M Mersel    mark.mersel@bryancave.com
- Elissa Miller    emiller@sulmeyerlaw.com
- Christopher Minier    becky@ringstadlaw.com
- Frank W Molloy    jgalambos@hmspasadena.com, mdickey@hmspasadena.com
- Susan I Montgomery    susan@simontgomerylaw.com
- Jennifer L Nassiri    jennifer.nassiri@dlapiper.com, bambi.clark@dlapiper.com
- Lisa N Nobles    lnobles@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Christina M Padien    cmoore@akingump.com
- Christine M Pajak    cpajak@stutman.com
- Mark Palley    mp@marionsinn.com
- John Petriello    john@lep-lawyers.com
- David M Poitras    dpoitras@jmbm.com
- Christian L Raisner    bankruptcycourtnotices@unioncounsel.net, craisner@unioncounsel.net
- Dean G Rallis Jr    drallis@sulmeyerlaw.com
- Todd C. Ringstad    becky@ringstadlaw.com
- Christopher O Rivas    crivas@reedsmith.com
- Victor A Sahn    vsahn@sulmeyerlaw.com
- Nanette D Sanders    becky@ringstadlaw.com
- Scott A Schiff    sas@soukup-schiff.com
- Gerald N Sims    jerrys@psdslaw.com
- Robyn B Sokol    ecf@ebg-law.com, rsokol@ebg-law.com
- Bennett L Spiegel    blspiegel@jonesday.com
- Michael St James    ecf@stjames-law.com
- Adam M Starr    starra@gtlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

| In re:<br>AXIUM INTERNATIONAL, INC.,<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 6:08-bk-10277-BB |
|---|---|

- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- Wayne R Terry    wterry@hemar-rousso.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Christine S Upton    csupton@kscllp.com
- Jason Wallach    jwallach@gladstonemichel.com
- Phillip K Wang    pwang@duanemorris.com
- Philip S Warden    philip.warden@pillsburylaw.com
- Gilbert B Weisman    notices@becket-lee.com
- Steven Werth    swerth@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Andrew J Whealy    andrew.whealy@kutakrock.com
- Katherine M Windler    katherine.windler@bryancave.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Martin S Zohn    mzohn@proskauer.com
- 

**CONTINUATION FROM SECTION II:** TO BE SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served)


**CONTINUATION FROM SECTION III:** TO BE SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served)

- 

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                    **F 9013-3.1**