1  Daniel A. Lev (CA Bar No. 129622)
      dlev@sulmeyerlaw.com
2  Steven F. Werth (CA Bar No. 205434)
      swerth@sulmeyerlaw.com
3  Lisa N. Nobles (CA Bar No. 233723)
      lnobles@sulmeyerlaw.com
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520
7
   Attorneys for Howard M. Ehrenberg,
8  Chapter 7 Trustee

9              **UNITED STATES BANKRUPTCY COURT**

10   **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

11  In re                              Case No. 2:08-bk-10277-BB

12  Axium International, Inc.,          Chapter 7

13          Debtor.                    Jointly Administered With Case:

14                                     Case No. 2:08-bk-10376-BB

15                                     Substantively Consolidated With Cases:

16                                     Case No. 2:08-bk-10294-BB
                                       Case No. 2:08-bk-10327-BB
17                                     Case No. 2:08-bk-10339-BB
                                       Case No. 2:08-bk-10304-BB
18                                     Case No. 2:08-bk-10312-BB
                                       Case No. 2:08-bk-10340-BB
19                                     Case No. 2:08-bk-10297-BB
                                       Case No. 2:08-bk-10329-BB
20                                     Case No. 2:08-bk-10319-BB
                                       Case No. 2:08-bk-10326-BB
21                                     Case No. 2:08-bk-10332-BB
                                       Case No. 2:08-bk-10336-BB
22                                     Case No. 2:08-bk-10314-BB
                                       Case No. 2:08-bk-10317-BB
23                                     Case No. 2:08-bk-10333-BB
                                       Case No. 2:08-bk-10291-BB
24                                     Case No. 2:08-bk-10338-BB
                                       Case No. 2:08-bk-10280-BB
25                                     Case No. 2:08-bk-10305-BB
                                       Case No. 2:08-bk-10335-BB
26                                     Case No. 2:08-bk-10321-BB
                                       Case No. 2:08-bk-10285-BB
27                                     Case No. 2:08-bk-10320-BB
                                       Case No. 2:08-bk-10306-BB
28                                     Case No. 2:08-bk-10311-BB

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SLEE\ 615280.1

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Case No. 2:08-bk-10301-BB
Case No. 2:08-bk-10298-BB
Case No. 2:08-bk-10341-BB
Case No. 2:08-bk-10331-BB
Case No. 2:08-bk-10325-BB
Case No. 2:08-bk-10290-BB

**CHAPTER 7 TRUSTEE'S OPPOSITION
TO MOTION TO COMPEL
ABANDONMENT OF CERTAIN CLAIMS
PURSUANT TO SECTION 547 OF THE
BANKRUPTCY CODE**

[Declaration of David Roberts filed
concurrently herewith]

DATE:          February 23, 2010
TIME:          2:00 p.m.
PLACE:         Courtroom "1475"
               255 E. Temple Street
               Los Angeles, CA 90012

| | |
|---|---|
| In re | Case No. 2:08-bk-10376-BB |
| Diversity MSP, Inc., | Chapter 7 |
| Debtor. | Jointly Administered With Case: |
| | Case No. 2:08-bk-10277-BB |
| | Substantively Consolidated With Cases: |
| | Case No. 2:08-bk-10372-BB |
| | Case No. 2:08-bk-10316-BB |
| | Case No. 2:08-bk-10373-BB |
| | Case No. 2:08-bk-10375-BB |

| | | |
|---|---|---|
| ☒ | Affects Both Debtors | |
| ☐ | Affects Axium International, Inc. | 2:08-bk-10277-BB |
| ☐ | Affects Diversity MSP, Inc. | 2:08-bk-10376-BB |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    EXPRESS SCRIPTS FAILS TO MEET ITS BURDEN OF PROOF
       WARRANTING ABANDONMENT OF THE PREFERENCE ACTIONS .................. 3

       A.     The Transfers Were Of An Interest Of The Debtor In Property ................... 4

              1.     Ensemble Was Not A True Agent Of Express Scripts ....................... 5

              2.     Ensemble Was Not A Bailee ............................................................. 8

              3.     The Transfers Were Not Held In Trust .............................................. 9

       B.     The Express Vendors Were Creditors At The Time Of The Transfers ....... 11

       C.     The Transfers Were Made On Account Of An Antecedent Debt ............... 11

III.   EXPRESS SCRIPTS IS NOT A DEFENDANT IN ANY OF THE
       ADVERSARY PROCEEDINGS AND LACKS THE REQUISITE STANDING
       TO ARGUE ON BEHALF OF THE EXPRESS VENDORS .................................. 12

IV.    CONCLUSION ................................................................................................. 13

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

Page(s)

## **CASES**

City of Los Angeles v. United States DOC
    307 F.3d 859 (9th Cir. 2002)................................................................11

Garlock Sealing Technolgoies, LLC v. NAK Sealing Technologies Corp.
    56 Cal. Rptr. 3d 177 (2007)................................................................6, 7

In re Computrex, Inc.
    403 F.3d 807 (6th Cir. 2005)............................................................8, 9, 11

In re Golden Triangle Capital, Inc.
    171 B.R. 79 (9th Cir. BAP 1994)............................................................P10

In re Janmar, Inc.,
    4 B.R. 4 (Bankr. N.D. Ga. 1979)..............................................................3

In re Kelly
    21 B.R. 495 (Bankr. W.D. Va. 1982)..........................................................3

In re Pilz Compact Disc
    229 B.R. 630 (Bankr. E.D. Pa. 1999).........................................................4

In re Siegel
    204 B.R. 6 (Bankr. W.D.N.Y. 1996)...........................................................4

In re Tap, Inc.
    52 B.R. 271 (Bankr. D. Mass. 1985).........................................................10

Northview Motors v. Chrysler Motors Corp.
    186 F.3d 346 (3rd Cir. 1999).................................................................3

Thatcher v. Commissioner
    533 F.2d 1114 (9th Cir. 1976)...............................................................11

Torres v. City of Madera (In re Torres)
    2005 U.S. Dist. LEXIS 34672 *55 (E.D. Cal. 2005)............................................6

United States v. Napper
    887 F.2d 1528 (11th Cir. 1989)..............................................................12

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

ii

## STATUTES

11 U.S.C.
    § 101(5)..................................................................................................................11
    § 101(12)................................................................................................................11
    § 547 .................................................................................................................1, 3
    § 547(b)........................................................................................................2, 4, 13
    § 554 .................................................................................................................2, 3

## RULES

Federal Rules of Bankruptcy Procedure
    Rule 7024................................................................................................2, 12

Federal Rules of Civil Procedure
    Rule 24.............................................................................................12, 13
    Rule 24(a) ..............................................................................................12
    Rule 24(b) ..............................................................................................12

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    Howard M. Ehrenberg, the duly appointed, qualified and acting Chapter 7 Trustee

2 (the "Trustee") for the jointly administered and separately substantively consolidated

3 estates (the "Estates") of the debtors Axium International, Inc., AV Centurion Film, Inc.,

4 AV Global, Inc., Avalon Payroll Group, Inc., Avalon Production Accounting, Inc., Avalon

5 Visual Corp., Avalon Worldwide, Inc., Avalon Film Services, Inc., Avalon Hollywood

6 Services, Inc., AX Centurion Film, Inc., AX Global, Inc., Axi Cash, Inc., AXICO, Inc.,

7 Axium ATB, Inc., Axium Bond Corp., Axium Cinema, Inc., Axium Entertainment, Inc.,

8 Axium Film Corp., Axium Holdings, Inc., Axium Hollywood Services, Inc., Axium Payroll

9 Group, Inc., Axium Payroll Services, Inc., Axium SC, LLC, Axium Visual Corp., Axium

10 Worldwide, Inc., Centurion Cinema, Inc., ECG Minn RE, LLC, Global Enterprises, Inc.,

11 Global Music, Inc., Global Worksource, Inc., PAV Film Services, Inc., Talent VMS, Inc.,

12 PAX Film Services, Inc., Diversity MSP, Inc. dba ECG dba Ensemble Chimes Global,

13 Diversity Internal, Inc., Ensemble Chimes Servicing, Inc., and Ensemble Chimes Global

14 Puerto Rico, Ltd. (collectively, the "Debtors"), hereby submits his Opposition (the

15 "Opposition") to the "Motion to Compel Abandonment of Certain Claims Pursuant to

16 Section 547 of the Bankruptcy Code" (the "Motion") filed by Express Scripts, Inc.

17 ("Express Scripts"), and represents as follows:

18              I.

19          **INTRODUCTION**

20    After settling more than two hundred preference demands with an aggregate

21 settlement value of approximately $2 million, the Trustee filed in excess of 650

22 preference actions against those non-settling entities who received payments from the

23 Debtors in the 90-day period prior to the Debtors' petition dates.  Notwithstanding the fact

24 that the Trustee has now settled more than 240 preference demands in an aggregate

25 amount exceeding $2.7 million, settlement negotiations are ongoing, and the Trustee

26 expects the value to the estates to be considerably higher than $2.7 million, Express

27 Scripts has the temerity to contend on behalf of all creditors of these estates that the

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   existing actions are burdensome and should be abandoned.  Express Scripts' contention

2   is not supported by the facts of these cases or applicable law.

3       Express Scripts, who is not a defendant in any of the adversary proceedings

4   brought by the Trustee in these cases and has not sought leave to intervene under Rule

5   7024 of the Federal Rules of Bankruptcy Procedure, now asserts that a portion of the

6   Trustee's avoidance actions are of inconsequential value.  Specifically, Express Scripts

7   challenges the value of actions brought against vendors with whom Express Scripts had

8   a contractual relationship (the "Express Vendors").  However, the value of the actions

9   against the Express Vendors (collectively, the "Preference Actions") cannot be disputed.

10  As stated, not only has the Trustee already entered into more than 240 settlements

11  recovering millions of dollars in cash to the estates, but the Trustee has entered into

12  settlements with at least 4 of Express Scripts' *very own vendors.*  The Trustee would not

13  have been able to enter into these settlements, or recover these monies, if the

14  Preference Actions had no basis in fact or law.

15      Moreover, Express Scripts' assertion that the Preference Actions have

16  inconsequential value does not pass the straight-face test.  The fact that the Trustee has

17  already recovered millions of dollars on account of preference actions is impossible to

18  ignore, yet the Motion does so.  The Motion instead asserts that the Preference Actions

19  have no value because the Trustee cannot satisfy the requirements of 11 U.S.C. §

20  547(b).  Yet, this is a matter of fact to be proven at trial, at which time the Trustee will

21  present the Court with overwhelming evidence in support of his position.  Express Scripts

22  could not win a motion for summary judgment on these grounds (and does not have the

23  requisite standing to file such motion in any case), thus it hopes to achieve the same

24  result by a motion brought pursuant to 11 U.S.C. § 554.  Regardless of the standard,

25  Express Scripts fails to meet its burden.

26      In the exercise of the Trustee's business judgment, the Trustee's pursuit of the

27  Preference Actions maximizes the value to the Estates.  The Trustee's business

28  judgment is entitled to affirmance by this Court unless the evidence presented indicates

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  that there is no value in maintaining the Preference Actions.  The Trustee's prosecution

2  of avoidance actions has already resulted in $2.7 million for the Estates, which is all the

3  evidence necessary that the Preference Actions have value.  For these reasons and the

4  reasons discussed below, the Motion should be denied.

5                                                                II.

6  **EXPRESS SCRIPTS FAILS TO MEET ITS BURDEN OF PROOF WARRANTING**

7  **ABANDONMENT OF THE PREFERENCE ACTIONS**

8          While Section 554 of the Bankruptcy Code permits a party in interest to request

9  that a trustee abandon property of the estate, this is intended to be used narrowly, in

10  cases in which the trustee is prepared to stipulate to abandonment but is unwilling to file

11  a motion him or herself.  *See* In re Janmar, Inc., 4 B.R. 4 (Bankr. N.D. Ga. 1979).

12  Generally, unless a trustee agrees to abandonment of particular property, no

13  abandonment shall be issued at the request of a party in interest.  Id.  *See* also In re

14  Kelly, 21 B.R. 495 (Bankr. W.D. Va. 1982) (no abandonment ordered where evidence is

15  that property has value, and trustee has not found property to be burdensome to estate).

16  The abandonment of litigation is typically forced upon a trustee only when a third party

17  has a perfected security interest in the litigation claim, thus preventing the litigation from

18  generating any money for creditors.  *See*, e.g. Northview Motors v. Chrysler Motors

19  Corp., 186 F.3d 346, 348 (3rd Cir. 1999).

20          The Motion does not cite a single instance of a bankruptcy court ordering

21  abandonment of actions under facts such as those here.  The Trustee cannot find a

22  single reported case in which a third party successfully forced a trustee to abandon

23  actions pursuant to Section 547 of the Bankruptcy Code, on grounds other than the claim

24  was fully encumbered by a secured creditor.  To grant the relief requested in the Motion

25  outside the framework of a motion for summary judgment would create a loophole where

26  any aggrieved defendant in an adversary proceeding - or any non-aggrieved party who

27  has filed a proof of claim in the bankruptcy case - may file a motion to abandon the

28

1  litigation, sidestepping the onerous requirements of a motion for summary judgment by

2  hoping to get the same relief by mere preponderance of the evidence.

3       Express Scripts bears the burden of proof, by a preponderance of the evidence,

4  that the property to be abandoned has no greater than inconsequential value to the

5  Debtors' Estates. <u>In re Siegel</u>, 204 B.R. 6, 8 (Bankr. W.D.N.Y. 1996); <u>In re Pilz Compact</u>

6  <u>Disc</u>, 229 B.R. 630 (Bankr. E.D. Pa. 1999). Express Scripts cannot meet this burden, as

7  the evidence shows instead that the Preference Actions are a significant asset of the

8  Estates. Not only has the Trustee already entered into settlements amounting to more

9  than $2.7 million, but the Trustee has entered into settlements with 4 of the Express

10  Vendors. Further, in each of the Preference Actions here, the Trustee has already

11  weighed the merits of the action and has determined that the action is of value to the

12  Estates. Of the 50 Express Vendors identified in Exhibit "B" to the Declaration of Carl

13  Waeckerle in support of the Motion (the "Waeckerle Decl."), the Trustee instructed his

14  counsel to bring action against only 27 of them.

15       Finally, Express Scripts fails to demonstrate that the Trustee cannot meet his

16  statutory requirements under Section 547(b) to bring the Preference Actions. The

17  monies paid by Diversity MSP Inc., d/b/a Ensemble Workforce Solutions, Inc.

18  ("Ensemble") to the Express Vendors were property in which Ensemble had an interest,

19  were on account of an antecedent debt, and were paid to the Express Vendors on

20  account of their status as creditors of the Estates.

21      **A.**   <u>**The Transfers Were Of An Interest Of The Debtor In Property**</u>

22       The Trustee has filed approximately 27 complaints against the Express Vendors

23  (collectively, the "Complaints"). The Complaints specifically identify each and every

24  transfer from Ensemble to the Express Vendors during the 90-day period prior to the

25  Debtors' petition date (individually and collectively, the "Transfers"). The Transfers were

26  of monies from one of Ensemble's general accounts, over which Ensemble had complete

27  control. *See* "Declaration of David Roberts in Support of Trustee's Opposition to Motion

28  to Compel Abandonment of Certain Claims Pursuant to Section 547 of the Bankruptcy

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  Code," filed concurrently herewith (the "Roberts Decl."), ¶6.  Thus, they represent

2  property in which the Debtor had an interest.

3      Express Scripts asserts three mutually exclusive theories by which it argues that

4  the Transfers were not property of the Estates.  The first is that Ensemble was the agent

5  of Express Scripts.  The second is that Ensemble and Express Scripts were in a

6  bailor/bailee relationship.  The third is that the Transfers were of monies which were held

7  in express trust for Express Scripts or the Express Vendors.  Each of these arguments

8  fails.

9         **1.      Ensemble Was Not A True Agent Of Express Scripts**

10      Ensemble and Express Scripts entered into a "Master Services Agreement" on

11  March 16, 2006 (the "MSA").  The MSA provides that Ensemble would manage

12  essentially all aspects of the employment of temporary workers provided to Express

13  Scripts, from placing orders for temporary workers (a task only to be performed by

14  Ensemble, MSA Section 4.5), to assigning the "manner and means" of work to the

15  temporary workers (MSA Section 4.7), to paying the Express Vendors for their work

16  (MSA, Section 3.4).

17      The MSA specifically states that Ensemble is not to be treated as a full agent of

18  Express Scripts.  In Section 8.1, the MSA states that at all times during the term of the

19  agreement, Ensemble and its employees "shall remain independent of ESI."  The MSA

20  further states that the agreement was not a partnership or joint venture, and that

21  "[n]either party shall have the power to bind or commit the other without receiving prior

22  written authorization."  These are not the hallmarks of an agency relationship, regardless

23  of whether the MSA used the term "limited agent" with respect to Ensemble.  It appears

24  from a March 15, 2006 internal memorandum of Express Scripts that the relationship

25  between the parties was contemplated to be a "strategic alliance" in which Ensemble was

26  a "third-party administrator" of Express Scripts' workforce staffing activities.  See Exhibit

27  "A" to Roberts Decl.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    An agent must have authority to bind its principal.  <u>Garlock Sealing Technolgoies,</u>

2  <u>LLC v. NAK Sealing Technologies Corp.</u>, 56 Cal. Rptr. 3d 177, 199 (2007) (citing the

3  Restatement (Second) of Agency). Here, Ensemble did not have that authority pursuant

4  to the express terms of the MSA.  The hallmark of an agency relationship is not that the

5  parties act independently of one another – however such independence is the express

6  mandate of the MSA.   Nor is it one in which the principal is limited from taking action –

7  yet the MSA limits Express Scripts' ability to take key actions relating to the Express

8  Vendors.  For example, the MSA prevents Express Scripts from placing work orders with

9  the Express Vendors.  MSA, Section 4.5.  As stated in the Motion, one of the hallmarks of

10  an agency relationship is that an agent not mingle the principal's property with that of

11  anyone else.  Motion, p.9, ln. 2.  However, the MSA is silent on that requirement, and in

12  fact Ensemble's business was to commingle *all* monies coming from customers such as

13  Express Scripts.  *See* Roberts Decl., ¶10.  Given these factors the relationship between

14  Ensemble and Express Scripts was not one which can be adequately characterized as

15  principal/agent.

16    The Motion additionally cites Missouri law in support of the argument that an

17  agency relationship exists here, yet pursuant to Missouri law as well, an agency

18  relationship does not exist.  Missouri law apparently requires that both "consent" and

19  "control" exist to establish a principal/agent relationship.  Motion, p.9, lns. 14-16.  The

20  Motion at least attempts to address the "consent" half of this equation by raising the

21  express terms of the MSA (which, as discussed above, instead state that Ensemble and

22  Express Scripts shall remain *independent entities* without the ability to bind each other),

23  but completely ignores the "control" element.  The power to control the manner and

24  means of performance is the hallmark of agency.  <u>Torres v. City of Madera (In re Torres)</u>,

25  2005 U.S. Dist. LEXIS 34672 *55 (E.D. Cal. 2005).  That is true in California, and it is true

26  in Missouri.  Why the Motion ignores this element is unclear.  In any case, it cannot be

27  met.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1      Express Scripts did not have the power to control Ensemble, pursuant to the

2  express terms of the MSA.  The MSA states, in paragraph 8.1, that at all times during the

3  term of the MSA, Ensemble and its employees shall remain independent of Express

4  Scripts.  That same paragraph further states that neither party shall have the power to

5  "bind or commit" the other without receiving written authorization.  Thus, pursuant to the

6  MSA, Express Scripts had no power to control Ensemble.  What the parties had was a

7  "strategic alliance" in Express Scripts' terms, not a principal-agent relationship.

8      The Motion cites Garlock Sealing Technolgoies, LLC v. NAK Sealing Technologies

9  Corp., 56 Cal. Rptr. 3d 177 (2007) in support.  There, the court upheld a lower court

10  finding of agency as supported by adequate evidence.  The lower court, interpreting a

11  contract written entirely in Chinese, held that an importer was an agent for a U.S.

12  distributor after the parties entered into a written contract.  The Garlock court noted that

13  the importer held himself out to third parties as the agent for the distributor, that the

14  operations manager of the importer understood the importer to be an agent, and that the

15  importer was essentially a "sales office" of the distributor.  Finally, the court applied an

16  eight-factor agency test that applied solely in the context of a company which receives

17  goods for resale, a fact pattern which is not the case here.  Id. at 200.

18      The relationship between the parties here are thus distinguishable from the parties

19  in Garlock.  First, the Garlock parties entered into a contract in which the word agent (in

20  Chinese) appeared five times.  Id. at 198.  Here, the MSA contains only the term "limited

21  agent," which is neutralized by express language that preserves Ensemble's

22  independence of and freedom from control by Express Scripts.  In Garlock, the principal

23  held itself out as the principal of the agent.  Id.  Here, Express Scripts identified itself as a

24  "third-party administrator" with whom Express Scripts was in a "strategic alliance."  In

25  Garlock, even the operations manager for the agent understood the company to be an

26  agent.  Id.  Here, there is no evidence that Ensemble held itself out as an agent for

27  Express Scripts.  The parties' relationship does not even satisfy the two-part test for

28  agency cited in the Motion, much less the eight-part test used in Garlock.  Express

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  Scripts at no time possessed any power or control over Ensemble.  Express Scripts,

2  which has filed a proof of claim in these cases in the amount of $1.6 million, likely wishes

3  it did.

### 2.      Ensemble Was Not A Bailee

5  Express Scripts cites essentially a single case in support of its theory that the

6  parties were in a bailor/bailee relationship, In re Computrex, Inc., 403 F.3d 807 (6th Cir.

7  2005).  There, the Sixth Circuit upheld a dismissal of a trustee's action under Section 547

8  of the Bankruptcy Code on account of the debtor being a bailee of monies paid out to

9  creditors in the 90-day period.  The decision of Computrex turned upon a single fact:  the

10  court found that none of the carriers who received payment in the 90-days were creditors

11  of the debtor.  Instead, the court determined they were creditors of a third party.  As such,

12  the Sixth Circuit correctly held that none of the payments were made on account of an

13  antecedent debt.

14  According to at least one of Express Scripts' own vendors, Ensemble had a

15  contractual obligation to pay it.  Attached hereto as **Exhibit "B"** is a stipulation between

16  the Trustee and Analysts International (one of the Express Vendors), entered by the

17  Court on February 7, 2008 (the "Stipulation").  In the Stipulation, Analysts International

18  states that it entered into a "Subcontractor Supplier Agreement" with the Debtors

19  respecting the work it performed for Express Scripts.  Such agreement would put the

20  Debtors and Analysts International into a contractual relationship pursuant to which any

21  payment by Ensemble to Analysts International was made on account of Analysts

22  International being a creditor of Ensemble.  This fact alone distinguishes the case here

23  from the facts in Computrex.

24  Further, the MSA does not contemplate the strict invoicing and payment terms

25  between the parties in Computrex, in which the debtor contracted to pay freight charges

26  within 24 hours of receipt, which led the court there to conclude that the debtor did not

27  have "dominion and control" over the funds.  Computrex, at 811.  Here, the MSA

28  contemplates only that Express Scripts would pay Ensemble within 15 days of invoice.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    MSA, Section 3.4.  The MSA nowhere mandates a timeframe for Ensemble to pay any

2    Express Vendor.  While certain information relating to this issue may be included in

3    Schedule 1 or Schedule 2 to the MSA, for some inexplicable reason these documents are

4    not attached to the Waeckerle Decl. or the Declaration of Kenneth J. Quinn in support of

5    the Motion (the "Quinn Decl.").

6         The MSA does not define Express Scripts' and Ensemble's relationship as strictly

7    as the contract between the parties in <u>Computrex</u>.  The MSA gives Ensemble full control

8    over the manner and means of work performed by the Express Vendors (MSA, Section

9    4.7), full control over invoicing to Express Scripts (MSA, Section 3.3), the ability to

10   dispute any payment made by Express Scripts (MSA, Section 3.5), and permits

11   Ensemble to enter into contracts with the Express Vendors directly (MSA, Section 2).

12   The parties seemed to contemplate and contract that Ensemble was anything *but* a

13   bailee.  Schedule 3 to the MSA defines Ensemble's relationship to Express Scripts as

14   "agent and/or prime contractor to ESI".  For the reasons discussed above, the

15   relationship of the parties does not meet the legal definition of a principal/agent

16   relationship, thus what the parties appear to have contemplated is that Ensemble would

17   act as a "prime contractor".  This is consistent with Express Scripts' understanding that

18   the parties were in a "strategic alliance" in which Ensemble was a "third party

19   administrator".  Given the broad range of services performed by Ensemble for Express

20   Scripts, combined with Ensemble's independence and freedom from control, the

21   evidence is inadequate to support a finding that Ensemble was a bailee here.

22            **3.     The Transfers Were Not Held In Trust**

23         The Motion asserts that the Transfers were of monies held by Ensemble "pursuant

24   to a constructive trust."

25         A constructive trust is not a trust; it is an equitable remedy.  At the time of the

26   Transfers, no court had granted Express Scripts or any Express Vendor an equitable

27   remedy which could be described as giving such party a "constructive trust."  Certainly,

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   the Motion is silent as to any such remedy being imposed.  Thus, no constructive trust

2   existed at the time of the Transfers.

3       Further, the MSA did not create, nor did the parties intend, an express trust.  The

4   main case cited by Express Scripts, In re Golden Triangle Capital, Inc., 171 B.R. 79 (9th

5   Cir. B.A.P. 1994) turned on the court's decision that the payee was not a creditor of the

6   debtor and thus the debtor had no independent obligation to pay it.  As the Stipulation

7   attached hereto as **Exhibit "A"** demonstrates, the Express Vendors apparently did have

8   a contractual relationship with the Debtors, making all such payments to them proper.  To

9   rule that the Debtor had no independent obligation to pay any staffing vendor of a

10   company for which Ensemble acted as a contractor would invalidate hundreds, perhaps

11   millions of dollars' worth of claims in these cases.

12       The Motion also cites In re Tap, Inc., 52 B.R. 271 (Bankr. D. Mass. 1985) for

13   support of its creative, though incorrect, application of the law.  In Tap, the court ruled

14   that a trust existed where the parties' words and conduct over a 21-year history

15   suggested a trust relationship.  There, the issue was a transfer of monies to a debtor to

16   pay taxes on a three-day turnaround.  Id. at 276.  As discussed above, the MSA does not

17   contemplate such tight restrictions on Ensemble, in fact giving it a wide degree of control

18   over the processing of the Transfers.  The 21-year history in the Tap decision is

19   significantly longer than the relationship between Express Scripts and Ensemble, which

20   lasted less than 2 years.  The Tap court also supported its ruling by finding that the

21   transfer was not made on any expectation of the debtor's solvency.  Id.  However, the

22   contracts which Express Scripts entered into with the Express Vendors, a purportedly

23   representative sample of which is attached as Exhibit "C" to the Waeckerle Decl.,

24   suggests the opposite.  Paragraph 5 of the "Amended And Restated Temporary Worker

25   Staffing Services Agreement," (the "Staffing Services Agreement") states that Express

26   Scripts will pay the Express Vendor (here, Aurora Systems Group, Inc.) if Ensemble fails

27   to pay the amount by reason of bankruptcy.  Thus, Express Scripts contemplated from

28   the very beginning that Ensemble's solvency would determine whether or not payments

1    were likely to be made to the Express Vendors.  It also bears mentioning that the

2    Debtors' lender in these cases, GoldenTree, seized the monies in the Debtors' account

3    pre-petition, asserting that these monies were property of the Debtors subject to

4    GoldenTree's liens.  If Express Scripts believes otherwise, it has the right to pursue

5    GoldenTree on a "trust" theory, as recognized by the Court during the hearing to approve

6    the Trustee's global settlement with GoldenTree on January 12, 2010.

7        **B.**    **The Express Vendors Were Creditors At The Time Of The Transfers**

8        At the time the Transfers were made, Ensemble had an obligation to pay the

9    Transfers to the Express Vendors.  The Staffing Services Agreement states, in paragraph

10    5, that Ensemble "shall" pay the Express Vendors the invoiced amounts.  The word

11    "shall" creates an obligation. City of Los Angeles v. United States DOC, 307 F.3d 859,

12    880 (9th Cir. 2002).  That which one is under an obligation to pay is a "liability".  Thatcher

13    v. Commissioner, 533 F.2d 1114 (9th Cir. 1976).  Liability on a claim is a "debt".  11

14    U.S.C. § 101(12).  This gave the Express Vendors a "claim" as that term is defined in 11

15    U.S.C. § 101(5), and thus made them creditors at the time of the Transfers.

16        Further, Ensemble was in a contractual relationship with at least some of the

17    Express Vendors, as evidenced by the Stipulation attached hereto as Exhibit "A".  In

18    addition, Ensemble was in a contractual relationship with hundreds of additional staffing

19    vendors who did not provide work to Express Scripts.  Many of these vendors have lost

20    tens, even hundreds of thousands of dollars, have filed claims against the Estates, and

21    likely would be surprised to find out that the Debtors owe them nothing.

22        **C.**    **The Transfers Were Made On Account Of An Antecedent Debt**

23        Express Scripts argues that Ensemble had no obligation to pay the Express

24    Vendors, after being paid by Express Scripts.  Motion, p.18.  Confusingly, Express

25    Scripts also argues that the Debtors *would have had* an obligation to pay the Express

26    Vendors if the payments were not made as required.  Express Scripts again cites

27    Computrex in support, however it does not explain why there was no contractual

28    obligation of Ensemble to pay here, even though Ensemble was in a contractual

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  relationship with the Express Vendors (see Exhibit "A") and Express Scripts' own

2  agreements with the Express Vendors stated that Ensemble was obligated to pay

3  invoiced amounts.

III.

5  **EXPRESS SCRIPTS IS NOT A DEFENDANT IN ANY OF THE ADVERSARY**

6  **PROCEEDINGS AND LACKS THE REQUISITE STANDING TO ARGUE ON BEHALF**

7  **OF THE EXPRESS VENDORS**

8      Rule 24 of the Federal Rules of Civil Procedure, made applicable to these cases

9  by virtue of Rule 7024 of the Federal Rules of Bankruptcy Procedure, governs situations

10  in which persons not already parties may intervene in existing litigation.  In other words,

11  Rule 24 permits a non-party to seek to join in litigation in which it was not previously

12  invited.  Although the Trustee is inclined to refrain from engaging in a lengthy discussion

13  of the differences between mandatory intervention under Rule 24(a)) and permissive

14  intervention under Rule 24(b), and whether Express Scripts could sustain its burden of

15  proof under either subsection, the point remains that if Express Scripts seeks to raise

16  arguments of law and fact germane and personal to its vendors, it should seek such a

17  right under applicable provisions of Rule 24.  Absent a formal motion for intervention, the

18  Trustee, and perhaps the particular defendant itself, is deprived of the opportunity to

19  address the competing rights of the parties.  This is particularly crucial since under either

20  mandatory or permissive intervention, the question of standing, that is, whether the party

21  seeking intervention has a sufficient stake in the litigation to satisfy ordinary requirements

22  for standing, must still be addressed.  *See* United States v. Napper, 887 F.2d 1528 (11th

23  Cir. 1989) (standing is required for both intervenors of right and permissive intervenors).

24  Here, Express Scripts has no such demonstrable stake; but if it believes otherwise, it

25  should seek to formally join in the Express Vendor's actions.

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1

## IV.

2

## CONCLUSION

3    There is no legal theory by which a non-party to an adversary proceeding, who

4  has not intervened under Rule 24, should be permitted to file the equivalent of a motion

5  for summary judgment by filing a motion to abandon litigation assets of the estate.  The

6  fact that Express Scripts raises legal challenges to the Trustee's already-pled Section

7  547(b) claims is insufficient to force the Trustee to abandon valuable litigation claims

8  against his wishes, particularly where the Trustee has demonstrated the legal and factual

9  flaws in the arguments raised by Express Scripts.  This is not a situation where

10  recoveries by the Trustee will simply to go a secured creditor and will not benefit any

11  unsecured creditors of these Estates.  Certainly none of the cases cited in the Motion so

12  hold, and none of the cases support an order from this Court forcing the Trustee to

13  abandon the Preference Actions.  For those reasons, and the reasons discussed above,

14  the Trustee respectfully requests that the Motion be denied in all respects, and for such

15  other and further relief as the Court deems just and proper under the circumstances.

16

17  DATED: February 9, 2010          Respectfully submitted,

18                                    **Sulmeyer**Kupetz
                                      A Professional Corporation
19

20

21                                    By:  _Steven Werth_ _____

22                                         Steven F. Werth
                                           Attorneys for Howard M. Ehrenberg,
23                                         Chapter 7 Trustee

24

25

26

27

28

13

# EXHIBIT A

1 | GREENBERG TRAURIG, LLP
MARK D. BLOOM
2 | (*Pro Hac Vice* Application Pending)
1221 Brickell Avenue
3 | Miami, Florida 33131
Telephone: (305) 579-0500
4 | Facsimile: (305) 579-0717
Email: bloomm@gtlaw.com
5 |
GREENBERG TRAURIG, LLP
6 | PAUL R. GLASSMAN (SBN 76536)
ADAM M. STARR (SBN 222440)
7 | 2450 Colorado Avenue, Suite 400E
Santa Monica, California 90404
8 | Telephone: (310) 586-7700
Facsimile: (310) 586-7800
9 | Email: starra@gtlaw.com

Attorneys for Analysts International Corporation



FILED

FEB ❚6 2008



ENTERED

FEB - 7 2008

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY            Deputy Clerk

LODGED

FEB 05 2008

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY            Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>Axium International, Inc.,<br><br>Debtor.<br><br>**Affects:**<br><br>Diversity MSP, Inc.<br><br>Diversity Internal, Inc.<br><br>Ensemble Chimes Servicing, Inc.<br><br>Ensemble Chimes Global Puerto Rico, Ltd. | CASE NO. LA 08-10277-BB<br><br>Jointly Administered with the following identified cases (08-10376-BB, 08-10372-BB, 08-10373-BB, 08-10375-BB)<br><br>Chapter 7<br><br>**STIPULATION BY ANALYSTS INTERNATIONAL CORPORATION AND CHAPTER 7 TRUSTEE AND ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT DIRECT PAYMENT FROM CUSTOMERS AND ALLOW OTHER RELIEF**<br><br>[NO HEARING REQUIRED] |

16
17
18
19
20
21
22
23
24
25
26
27
28

---

STIPULATION BY ANALYSTS INTERNATIONAL CORPORATION

1    This Stipulation is entered into by and between Analysts International Corporation

2  ("Staffing Company"), by and through its undersigned counsel, and Howard Ehrenberg, chapter 7

3  trustee (the "Trustee") of the above-captioned debtors, (the "Debtors"), by and through his

4  undersigned counsel. The Trustee and Staffing Company are referred to collectively herein as the

5  "Parties".

6                                          **RECITALS**

7        A.    The Debtors each filed a voluntary petition for relief under chapter 7 of the United

8  States Bankruptcy Code. Ensemble Chimes Servicing, Inc. filed its petition on January 8, 2008

9  and the other Debtors filed their petitions on January 9, 2008 (each such date with respect to such

10  Debtor, the "Petition Date"). Trustee is the duly-appointed chapter 7 trustee of the Debtors'

11  estates and is currently acting in said capacity.

12        B.    Pursuant to various Agreements for Centralized Vendor Management Services

13  (together, the "CVM Agreements"), one or more of the Debtors agreed to provide centralized

14  vendor management services to multiple customers, including the customer(s) listed on the

15  attached Exhibit A (such customer(s) listed on Exhibit A, the "Customers").

16        C.    Under the CVM Agreements, the Debtors agreed to provide systems consultants

17  and other technical personnel (collectively, the "Consultants") to the Customers to perform

18  programming, information technology and other services.

19        D.    The Debtors entered into one or more Subcontract Supplier Agreements with

20  Staffing Company (the "Subcontract Supplier Agreements") to provide the necessary personnel

21  and services required under the CVM Agreements (the "Services"). Staffing Company's

22  performance under the Subcontract Supplier Agreements allows the Debtors to satisfy their

23  obligations under the CVM Agreements and to receive the payments from the Customers

24  thereunder.

25        E.    The amounts received from each Customer include a service fee that is determined

26  by and calculated in accordance with terms and conditions of the various Subcontract Supplier

27  Agreements and/or CVM Agreements (the "Service Fee").

28

                                             2

**STIPULATION BY ANALYSTS INTERNATIONAL CORPORATION**

F.     The Bankruptcy Court has not entered an Order under Section 721 of the Bankruptcy Code authorizing the Trustee to operate the Debtors' businesses or to perform the Debtors' obligations under the CVM Agreements.  Further, the Bankruptcy Court has directed the Trustee to file, by no later than February 4, 2008, a motion to reject the Subcontract Supplier Agreements and the CVM Agreements, which the Bankruptcy Court will consider at a hearing on February 12, 2008.

G.     In order to ensure that the Customers continue to receive their required services under the CVM Agreements pending the final disposition of those agreements, and in order to ensure that Staffing Company receives full payment for its services under the Subcontract Supplier Agreements, Staffing Company and Trustee hereby stipulate that the Customers be permitted to pay Staffing Company directly for services performed under the Subcontract Supplier Agreements, less any Service Fee payable to the Debtors' estates, which shall be payable directly to the Trustee.

H.     As directed by the Bankruptcy Court at the January 23, 2008 hearing on the Trustee's motion to sell assets, the Parties agree that this Stipulation shall be submitted to the Bankruptcy Court for approval, and be fully binding, without any further notice, motion or hearing.

## STIPULATION

NOW THEREFORE, the Trustee and Staffing Company agree and stipulate as follows:

1.     This Stipulation shall be effective immediately upon execution by the Parties and execution by the Bankruptcy Court below approving all of its terms and conditions, and shall continue to be effective as among the Parties until the Subcontract Supplier Agreements are rejected either by order of the Bankruptcy Court or as provided herein (the "Effective Period").

2.     Notwithstanding any provision in the CVM Agreements or the Subcontract Supplier Agreements, the automatic stay under Section 362(a) of the Bankruptcy Code is hereby modified, *nunc pro tunc* to the Petition Date, as follows:

a.     Customers are authorized and directed to pay directly to Staffing Company all amounts due and payable for any services performed under the Subcontract

Supplier Agreements (whether prepetition or postpetition), provided, however, that Customers shall pay all Service Fees directly to the Trustee; and

    b.    Staffing Company is authorized to enter into direct contracts with Customers to provide the services formerly provided under the Subcontract Supplier Agreements.

3.    During the Effective Period, the Customers shall (a) direct all requests for Services by Staffing Company's Consultants directly to Staffing Company, in lieu of the Debtors or Trustee, and (b) transact and interface directly with Staffing Company with respect to, among other things, all invoices and payments on account of the Services provided by Staffing Company's Consultants.

4.    Any amounts received by Staffing Company constituting payments for any Service Fee payable to the Debtors shall be held by Staffing Company in trust for the benefit of the Debtors and promptly remitted to Trustee. Any amounts received by the Debtors or Trustee on account of Services performed by Staffing Company shall be held by Trustee in trust for the benefit of, and be promptly remitted to, Staffing Company.

5.    In the event there is any dispute concerning the amount of a Service Fee, each Party shall promptly calculate the disputed Service Fee and provide a full accounting to the other of the basis for its calculation of such Service Fee. In such an event, when Staffing Company holds funds in trust relating to a disputed Service Fee, Staffing Company shall, as soon as such dispute concerning the Service Fee is resolved (either by agreement or order of the Bankruptcy Court), remit such Service Fee to Trustee. When the Trustee holds funds in trust for the Staffing Company and there is a dispute concerning the amount of a Service Fee, the Trustee shall, as soon as such dispute concerning the Service Fee is resolved (either by agreement or order of the Bankruptcy Court), retain the Service Fee from the amount held in trust and pass through the balance of the respective funds to Staffing Company.

6.    Staffing Company agrees promptly to notify Trustee as soon as reasonably practical and in any event not later than fifteen (15) days following the receipt of any amount from a Customer that constitutes a Service Fee. The Trustee agrees promptly to notify Staffing Company as soon as reasonably practical and in any event not later than fifteen (15) days following the

4

STIPULATION BY ANALYSTS INTERNATIONAL CORPORATION

1  receipt by Trustee of any amount (other than a Service Fee) relating to services provided by

2  Staffing Company.

3        7.    With respect to all calculations of the Service Fee described herein, in the event

4  that a Customer has retained former personnel of the Debtors responsible for managing the

5  relationship between Staffing Company and Customer, including the calculation of the applicable

6  Service Fee due under the Subcontract Supplier Agreements with Staffing Company, Staffing

7  Company and the Trustee agree to use information and advice from such personnel in connection

8  with the calculation of the Service Fee. In the event that, pursuant to a separate agreement

9  between the Trustee and any such Customer, the Trustee agrees to (a) allow the Customer utilizing

10  such former personnel of the Debtors to calculate the Service Fee, and (b) allow the Customer to

11  forward such Service Fee to the Debtors with the balance to Staffing Company, Staffing Company

12  shall not be responsible for remitting an additional Service Fee from the already reduced amounts

13  it so receives from the Customer. If Staffing Company disputes the amount of the Service Fee or

14  the balance received from the Customer, then it may work directly with the Customer to resolve

15  such dispute.

16        8.    In the event Trustee does not file a motion to reject the Subcontract Supplier

17  Agreements by February 4, 2008, or the Court does not rule upon such motion by February 12,

18  2008, then the Subcontract Supplier Agreements shall be deemed automatically rejected, unless

19  otherwise provided in writing by Staffing Company.

20        9.    This Stipulation shall be immediately effective upon entry notwithstanding the stay

21  set forth in Bankruptcy Rule 4001(a)(3).

22        10.    The Bankruptcy Court retains jurisdiction to interpret and enforce the provisions of

23  this Stipulation.

24                [Remainder of Page Intentionally Left Blank]

25

26

27

28

**STIPULATION BY ANALYSTS INTERNATIONAL CORPORATION**

1    11.    Staffing Company may provide a copy of this Stipulation and any order thereon to

2    any Customer.

3    Dated: ~~January~~ _Felny 4_, 2008                GREENBERG TRAURIG, LLP

4

5

6                                                   By: _____
                                                    Paul K. Glassman

7                                                    Adam M. Starr
                                                    Attorneys for Staffing Company

8

9    Dated: January 31, 2008                    **SULMEYERKUPETZ**, A Professional Corporation

10

11

12                                                  By: _____
                                                    Daniel A. Lev

13                                                  (Proposed) Attorneys for Chapter 7 Trustee for
                                                    the Estate of Ensemble Chimes Servicing, Inc.

14

15   IT IS SO ORDERED

16   Dated: ____2/6____, 2008              _____

17                                                  The Honorable Sheri Bluebond
                                                    United States Bankruptcy Judge

18

19

20

21

22

23

24

25

26

27

28

_CHI 56,964,803v2 1/31/2008_

<u>EXHIBIT A</u>

Hewlett-Packard Company
Express Scripts, Inc.
Bayer Corporation
UnitedHealth Group Incorporated

**STIPULATION BY ANALYSTS INTERNATIONAL CORPORATION**

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the aforesaid county, State of California. I am over the age of 18 years and not a party to the within action. My business address is **2450 Colorado Avenue, Suite 400E, Santa Monica, CA 90404.**

On February 5, 2008, I served the **STIPULATION BY ANALYSTS INTERNATIONAL CORPORATION AND CHAPTER 7 TRUSTEE AND ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT DIRECT PAYMENT FROM CUSTOMERS AND ALLOW OTHER RELIEF** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope, postage prepaid, addressed as follows:

*See Attached Service List*

☒ **(BY MAIL)**

☐ I deposited such envelope in the mail at Santa Monica, California. The envelope was mailed with postage thereon fully prepaid.

☒ I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Santa Monica, California, in the ordinary course of such business.

☐ **(STATE)**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)**    I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 5, 2008 at Santa Monica, California.

_____
Christine Pesis

8

**STIPULATION BY ANALYSTS INTERNATIONAL CORPORATION**

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do not file this form as a separate document.*

| In re: Axium Internation, Inc., Debtor. | CHAPTER 7 |
| | CASE NUMBER LA 08-10277-BB |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1.   You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify):* STIPULATION BY ANALYSTS INTERNATIONAL CORPORATION AND CHAPTER 7 TRUSTEE AND ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT DIRECT PAYMENT FROM CUSTOMERS AND ALLOW OTHER RELIEF

was entered on *(specify date):* FEB - 7 2008

2.   I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date):* FEB - 7 2008

Dated:  FEB - 7 2008

JON D. CERETTO
Clerk of the Bankruptcy Court

By: _____
*Deputy Clerk*

*Rev 1/01* This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.   **F 9021-1.1**

### SERVICE LIST FOR NOTICE OF ENTRY

Stipulation by **ANALYSTS INTERNATIONAL CORPORATION** and Chapter 7 Trustee and Order Modifying the Automatic Stay to Permit Direct Payment from Customers and Allow Other Relief

**In re:  Axium International, Inc.**
**Case #:  LA 08-10277-BB**

| | |
|---|---|
| Axium International, Inc.<br>5800  Wilshire Boulevard<br>Los Angeles, CA 90036<br>*Debtor* | David M. Poitras, Esq.<br>1900 Avenue of the Stars, 7th Floor<br>Los Angeles, Ca 90067<br>*Attorneys for Debtor* |
| Howard M. Ehrenberg, Esq.<br>Victor A. Sahn, Esq.<br>Sulmeyer Kupetz<br>333 South Hope Street, Suite 3500<br>Los Angeles, CA 90071<br>Telephone: 213-626-2311<br>Facsimile: 213-629-4520<br>Email: hehrenberg@sulmeyerlaw.com;<br>vsahn@sulmeyerlaw.com<br>*Trustee* | United States Trustee<br>Office of the United States Trustee<br>725 S. Figueroa Street, 26th Floor<br>Los Angeles, CA 90017<br>*U.S. Trustee* |
| Daniel A. Lev, Esq.<br>Sulmeyer Kupetz<br>333 South Hope Street, Suite 3500<br>Los Angeles, CA  90071<br>Telephone:  213- 626-2311<br>Facsimile: 213-629-4520<br>Email: dlev@sulmeyerlaw.com<br>*Attorneys for Trustee* | Michael S. Lurey, Esq.<br>Mark Broude, Esq.<br>Latham & Watkins LLP<br>633 West Fifth Street, Suite 4000<br>Los Angeles, CA  90071-2007<br>*Attorneys for GoldenTree Asset Management LP and GTAM Special Realty, LLC* |
| Paul R. Glassman<br>Adam M. Starr<br>Greenberg Traurig, LLP<br>2450 Colorado Avenue, Suite 400E<br>Santa Monica, California  90404 | |

**STIPULATION BY ANALYSTS INTERNATIONAL CORPORATION AND CHAPTER 7 TRUSTEE**

| In re:<br>Axium International, Inc.<br><br>Debtor(s). | CHAPTER: 7<br><br>CASE NUMBER: 2:08-bk-10277-BB |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California  90071-1406

A true and correct copy of the foregoing document described as  CHAPTER 7 TRUSTEE'S OPPOSITION TO MOTION TO COMPEL ABANDONMENT OF CERTAIN CLAIMS PURSUANT TO SECTION 547 OF THE BANKRUPTCY CODE  will  be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  February 9, 2010  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

| | | |
|---|---|---|
| Franklin C. Adams | - | franklin.adams@bbklaw.com |
| Andrew K. Alper | - | aalper@frandzel.com |
| Paul S. Arrow | - | parrow@buchalter.com |
| Elizabeth Berke-Dreyfuss | - | edreyfuss@wendel.com |
| Ann Bloetscher | - | aboetsc@ford.com |
| Erin N. Brady | - | enbrady@jonesday.com |
| Hall Brehme | - | crios@purdybrehme.com |
| Bradley E. Brook | - | bbrook@bbrooklaw.com |
| Gillian N. Brown | - | gbrown@pszjlaw.com |
| Michael E. Busch | - | michael.busch@fnf.com |
| Thomas H. Casey | - | msalustro@tomcaseylaw.com |
| Sara Chenetz | - | chenetz@blankrome.com |
| Shawn M. Christianson | - | cmcintire@buchalter.com |
| Leslie A. Cohn | - | leslie@lesliecohenlaw.com |
| Theodore A. Cohen | - | tcohen@sheppardmullin.com |
| Enid M. Colson | - | ecolson@linerlaw.com |
| Jon L. Dalberg | - | jdalberg@andrewskurth.com |
| Ana Damonte | - | ana.damonte@pillsburylaw.com |
| Henry S. David | - | hdavid@dskllp.com |
| Asheley G. Dean | - | agdean@hhlaw.com |
| Howard M. Ehrenberg | - | ehrenbergtrustee@sulmeyerlaw.com |
| Christina Erickson | - | cerickson@richardsonpatel.com |
| Richard W. Esterkin | - | resterkin@morganlewis.com |
| Lisa Hill Fenning | - | lisa.fenning@aporter.com |
| Wayne S. Flick | - | wayne.s.flick@lw.com |
| Joseph D. Frank | - | jfrank@fgllp.com |
| J. Rudy Freeman | - | rfreeman@linerlaw.com |
| Anthony A. Friedman | - | aaf@lnbrb.com |
| Ellen A. Friedman | - | mmyles@friedumspring.com |
| Michael J. Glenn | - | mglenn@thedonovanoffices.com |
| Sonya M. Grahl | - | sgrahll@ford.com |
| Irving M. Gross | - | igross@rdwlawcorp.com |
| Steven T. Gubner | - | sgubner@ebg-law.com |
| Peter J. Gurfein | - | pgurfein@akingump.com |
| Joseph G. Harraka, Jr. | - | jgharraka@beckermeisel.com |
| Brian T. Harvey | - | bharvey@buchalter.com |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | CHAPTER: 7 |
|---|---|
| Axium International, Inc. | |
| Debtor(s). | CASE NUMBER: 2:08-bk-10277-BB |

| | | |
|---|---|---|
| Michael J. Heyman | - | michael.heyman@klgates.com |
| Whitman L. Holt | - | wholt@stutman.com |
| Leslie R. Horowitz | - | lhorowitz@clarktrev.com |
| Mark D. Houle | - | mark.houle@pillsburylaw.com |
| Marsha A. Houston | - | mhouston@reedsmith.com |
| Paul Jasper | - | pjasper@dl.com |
| Peter F. Jazayeri | - | pjazayeri@ecjlaw.com |
| James O. Johnston | - | johnstonj@hbdlawyers.com |
| John J. Jolley, Jr. | - | jay.jolley@kutakrock.com |
| John H. Kim | - | jkim@cookseylaw.com |
| John W. Kim | - | jkim@nossaman.com |
| Jonathan J. Kim | - | jkim@pszjlaw.com |
| Joseph A. Kohanski | - | jkohanski@bushquinonez.com |
| Ian Landsberg | - | ilandsberg@lm-lawyers.com |
| Daniel A. Lev | - | dlev@sulmeyerlaw.com |
| Joy E. Levy | - | ecf@ebg-law.com |
| Adam A. Lewis | - | alewis@mofo.com |
| Michael S. Lurey | - | michael.lurey@lw.com |
| Josefina F. McEvoy | - | josefina.mcevoy@klgates.com |
| C. John M. Melissinos | - | jmelissinos@andrewskurth.com |
| Darrell C. Menthe | - | dmenthe@mcguirewoods.com |
| Hal M. Mersel | - | mark.mersel@bryancave.com |
| Elissa D. Miller | - | emiller@sulmeyerlaw.com |
| Susan I. Montgomery | - | susan@simontgomerylaw.com |
| Jennifer L. Nassiri | - | jennifer.nassiri@dlapiper.com |
| Aram Ordubegian | - | ordubegian.aram@arentfox.com |
| Christina M. Padien | - | cmoore@akingump.com |
| Christine M. Pajak | - | cpajak@stutman.com |
| Mark Palley | - | mp@marionsinn.com |
| Eric S. Pezold | - | epezold@swlaw.com |
| David M. Poitras | - | dpoitras@jmbm.com |
| Christian L. Raisner | - | bankruptcycourtnotices@unioncounsel.net |
| Todd C. Ringstad | - | becky@ringstadlaw.com |
| Christopher O. Rivas | - | crivas@reedsmith.com |
| Victor A. Sahn | - | vsahn@sulmeyerlaw.com |
| Nanette D. Sanders | - | becky@ringstadlaw.com |
| Scott A. Schiff | - | sas@soukup-schiff.com |
| Gerald N. Sims | - | jerrys@psdslaw.com |
| Bennett L. Spiegel | - | blspiegel@jonesday.com |
| Adam M. Starr | - | starra@gtlaw.com |
| Derrick Talerico | - | dtalerico@loeb.com |
| Wayne R. Terry | - | wterry@hemar-rousso.com |
| Christine S. Upton | - | csupton@kscllp.com |
| Jason Wallach | - | jwallach@gladstonemichel.com |
| Philip S. Warden | - | philip.warden@pillsburylaw.com |
| Gilbert B. Weisman, II | - | notices@becket-lee.com |
| Andrew J. Whealy | - | andrew.whealy@kutakrock.com |
| Steven Werth | - | swerth@sulmeyerlaw.com |
| Katherine M. Windler | - | katherine.windler@bryancave.com |
| David M. Wiseblood | - | dwiseblood@seyfarth.com |

☐ Service Information continued on attached page.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | CHAPTER: 7 |
| Axium International, Inc. | |
| Debtor(s). | CASE NUMBER: 2:08-bk-10277-BB |

**II.**    **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On February 9, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Sheri Bluebond
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1482
Los Angeles, CA 90012-3332

☐ Service Information continued on attached page.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 9, 2010 | Shirley L. Lee | /s/Shirley Lee |
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                    F 9013-3.1