1  Daniel A. Lev (CA Bar No. 129622)
      dlev@sulmeyerlaw.com
2  **Sulmeyer**Kupetz
      A Professional Corporation
3  333 South Hope Street, Thirty-Fifth Floor
    Los Angeles, California  90071-1406
4  Telephone: 213.626.2311
    Facsimile: 213.629.4520
5
    Attorneys for Howard M. Ehrenberg, Chapter 7 Trustee
6

7              **UNITED STATES BANKRUPTCY COURT**

8      **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

9

| 10 | In re | Case No. 2:08-bk-10277-BB |
|---|---|---|
| 11 | Axium International, Inc., | Chapter 7 |
| 12 | Debtor. | Jointly Administered With Case: |
| 13 | | Case No. 2:08-bk-10376-BB |
| 14 | | Substantively Consolidated With Cases: |
| 15 | | Case No. 2:08-bk-10294-BB |
| | | Case No. 2:08-bk-10327-BB |
| 16 | | Case No. 2:08-bk-10339-BB |
| | | Case No. 2:08-bk-10304-BB |
| 17 | | Case No. 2:08-bk-10312-BB |
| | | Case No. 2:08-bk-10340-BB |
| 18 | | Case No. 2:08-bk-10297-BB |
| | | Case No. 2:08-bk-10329-BB |
| 19 | | Case No. 2:08-bk-10319-BB |
| | | Case No. 2:08-bk-10326-BB |
| 20 | | Case No. 2:08-bk-10332-BB |
| | | Case No. 2:08-bk-10336-BB |
| 21 | | Case No. 2:08-bk-10314-BB |
| | | Case No. 2:08-bk-10317-BB |
| 22 | | Case No. 2:08-bk-10333-BB |
| | | Case No. 2:08-bk-10291-BB |
| 23 | | Case No. 2:08-bk-10338-BB |
| | | Case No. 2:08-bk-10280-BB |
| 24 | | Case No. 2:08-bk-10305-BB |
| | | Case No. 2:08-bk-10335-BB |
| 25 | | Case No. 2:08-bk-10321-BB |
| | | Case No. 2:08-bk-10285-BB |
| 26 | | Case No. 2:08-bk-10320-BB |
| | | Case No. 2:08-bk-10306-BB |
| 27 | | Case No. 2:08-bk-10311-BB |
| | | Case No. 2:08-bk-10301-BB |
| 28 | | Case No. 2:08-bk-10298-BB |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 · FAX 213.629.4520

Case No. 2:08-bk-10341-BB
Case No. 2:08-bk-10331-BB
Case No. 2:08-bk-10325-BB
Case No. 2:08-bk-10290-BB

**EXHIBIT A TO ORDER, AFTER
HEARING, GRANTING CHAPTER 7
TRUSTEE'S MOTION FOR ORDER (1)
AUTHORIZING SALE OF REAL
PROPERTY LOCATED AT 210 S.
VICTORY BOULEVARD, BURBANK,
CALIFORNIA, FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES
AND INTERESTS, (2) CONFIRMING
SALE TO THIRD PARTY OR THE
HIGHEST BIDDER APPEARING AT
THE HEARING; (3) DETERMINING
THAT BUYER IS A GOOD FAITH
PURCHASER; AND (4) WAIVING THE
FOURTEEN (14) DAY STAY
PRESCRIBED BY RULE 6004(h) OF
THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE**

DATE:      June 30, 2010
TIME:      10:00 a.m.
PLACE:    Courtroom "1475"

| In re | Case No. 2:08-bk-10376-BB |
|---|---|
| Diversity MSP, Inc., | Chapter 7 |
| Debtor. | Jointly Administered With Case: |
| | Case No. 2:08-bk-10277-BB |
| | Substantively Consolidated With Cases: |
| | Case No. 2:08-bk-10372-BB |
| | Case No. 2:08-bk-10316-BB |
| | Case No. 2:08-bk-10373-BB |
| | Case No. 2:08-bk-10375-BB |

| ☒    Affects Both Debtors | |
|---|---|
| ☐    Affects Axium International, Inc. | 2:08-bk-10277-BB |
| ☐    Affects Diversity MSP, Inc. | 2:08-bk-10376-BB |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

DLEV\ 670935.1

# EXHIBIT A



## STANDARD OFFER, AGREEMENT AND ESCROW
## INSTRUCTIONS FOR PURCHASE OF REAL ESTATE
### (Non-Residential)
AIR Commercial Real Estate Association

June 23, 2010
(Date for Reference Purposes)

1.   Buyer.
1.1 AUTRY NATIONAL CENTER OF THE AMERICAN WEST , ("Buyer")
hereby offers to purchase the real property, hereinafter described, from the owner thereof ("Seller") (collectively, the "Parties" or individually, a "Party"),
through an escrow ("Escrow") to close 30 or _____ days after the waiver or expiration of the Buyer's Contingencies BANKRUPTCY
SALE AUCTION OVERBID DATE, ("Expected Closing Date") to be held by Chicago Title ("Escrow
Holder") whose address is 700 S Flower St., Suite 900, Los Angeles, CA 90017;  ATTN:   MIKE
SLINGER , Phone No. 213.612.4131 , Facsimile No. 213.612.4133
upon the terms and conditions set forth in this agreement ("Agreement"). Buyer shall have the right to assign Buyer's rights hereunder, but any such
assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.
1.2 The term "Date of Agreement" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this
document or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to
purchase, the Property upon terms accepted by both Parties.
2.   Property.
2.1 The real property ("Property") that is the subject of this offer consists of (insert a brief physical description) A 77,518 square foot
office building on 3.6 acres of land

is located in the City of Burbank , County of Los Angeles
State of California , is commonly known by the street address of 210 SOUTH VICTORY BOULEVARD

and is legally described as: within provided title reports

(APN: 2451-016-017, 019 ).
2.2 If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be
completed or corrected to meet the requirements of
an applicable title company
("Title Company"), which shall issue the title policy hereinafter described.
2.3 The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to
applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: electrical
distribution systems (power panel, bus ducting, conduits, disconnects, lighting fixtures); telephone distribution systems (lines, jacks and connections
only); space heaters; heating, ventilating, air conditioning equipment ("HVAC"); air lines; fire sprinkler systems; security and fire detection systems;
carpets; window coverings; wall coverings; and All furniture, systems and building materials presently on
site.

(collectively, the "Improvements").
2.4 The fire sprinkler monitor☑ is owned by Seller and included in the Purchase Price. ☐ is leased by Seller, and Buyer will need to negotiate a
new lease with the fire monitoring company, ☐ ownership will be determined during Escrow, or ☐ there is no fire sprinkler monitor.
2.5 Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and
all of
which shall be removed by Seller prior to Closing.
3.   Purchase Price.
$7,450,000.00
3.1 The purchase price ("Purchase Price") to be paid by Buyer to Seller for the Property shall be AS DETERMINED IN BANKRUPTCY
COURT , payable as follows:
(a) Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash
transaction, the Purchase Price) $350,000.00
(Strike if not
applicable) (b) Amount of "New Loan" as defined in paragraph 5.1, if any: $_____
(c) Buyer shall take title to the Property subject to and/or assume the following existing deed(s) of
trust ("Existing Deed(s) of Trust") securing the existing promissory note(s) ("Existing Note(s)"):
(i) An Existing Note ("First Note") with an unpaid principal balance as of the
Closing of approximately: $_____
Said First Note is payable at $_____ per month,
(Strike if not including interest at the rate of _____% per annum until paid (and/or the
applicable) entire unpaid balance is due on _____);

(ii) An Existing Note ("Second Note") with an unpaid principal balance as of the
Closing of approximately: $_____
Said Second Note is payable at $_____ per month,
including interest at the rate of _____% per annum until paid (and/or the
(Strike if not entire unpaid balance is due on _____);
applicable) (d) Buyer shall give Seller a deed of trust ("Purchase Money Deed of Trust") on the
property, to secure the promissory note of Buyer to Seller described in paragraph 6
("Purchase-Money Note") in the amount of: $_____

INITIALS

PAGE 1 OF 9

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-6/07E

7

Total Purchase Price: S~~BBB~~ 7,450,000.00

~~3.2 If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.~~

4.  Deposits.

4.1 ☑ Buyer has delivered to Broker a check in the sum of $350,000.00 _____, payable to Escrow Holder, to be delivered to ~~Broker or Escrow Holder within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder; or ☐ within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder. Buyer shall deliver to Escrow Holder a check in the sum of $ _____, if said check is not received by Escrow Holder within said time period then Escrow Holder shall, upon request to Buyer,~~ unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer. **THE DEPOSIT SHALL BE NON-REFUNDABLE EXCEPT IF THE BUYER IS NOT THE ULTIMATE WINNER OF A COURT-APPROVED OVERBIDDING AUCTION PER BANKRUPTCY COURT SALE PROCEDURES, OR IF THE TRUSTEE ESTATE IS UNABLE TO DELIVER MARKETABLE TITLE TO BUYER.**

~~4.2 Additional deposits:~~

~~(a) Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of $ _____ to be applied to the Purchase Price at the Closing.~~

~~(b) Within 5 business days after the contingencies discussed in paragraph 9.1 (a) through (h) are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of $ _____ to be applied to the Purchase Price at the Closing.~~

4.3 Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the "Deposit"), in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is _____. NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax Identification Number is provided.

5.  Financing Contingency. (Strike if not applicable)

~~5.1 This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least ____% of the Purchase Price, on terms reasonably acceptable to Buyer. Such loan ("New Loan") shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have 7 days from receipt of the commitment setting forth the proposed terms of the New Loan within which to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of the disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.~~

~~5.2 Buyer hereby agrees to diligently pursue obtaining the New Loan. If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing within ____ days following the Date of Agreement, that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or has waived the New Loan contingency.~~

~~5.3 If, after due diligence, Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less any Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.~~

6.  ~~Seller Financing. (Purchase Money Note). (Strike if not applicable)~~

~~6.1 If Seller approves Buyer's financials (see paragraph 5.5) the Purchase Money Note shall provide for interest on unpaid principal at the rate of ____% per annum, with principal and interest paid as follows:~~

~~=======================================================================~~
~~=======================================================================~~
~~=======================================================================~~

~~The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Note(s) and/or the New Loan expressly called for by this Agreement.~~

~~6.2 The Purchase Money Note and the Purchase Money Deed of Trust shall contain provisions regarding the following (see also paragraph 10.3 (b)):~~

~~(a) Prepayment. Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.~~

~~(b) Late Charge. A late charge of 5% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.~~

~~(c) Due On Sale. In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.~~

~~6.3 If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, as Buyer's expense prepare and record on Seller's behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.~~

~~6.4 WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER UTILIZES DEFAULTS ON THE LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.~~

~~6.5 Seller's obligation to provide financing is contingent upon Seller's reasonable approval of Buyer's financial condition. Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of the disapproval of the contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition. If Buyer fails to deliver the required documentation then Seller may notify Escrow Holder in writing that Seller financing will not be available, and Buyer shall have the required documentation then Seller may notify Escrow Holder in writing that Seller financing will not be available, and Buyer shall have the option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall be conclusively presumed to have elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer's Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.~~

7.  **Real Estate Brokers.**

7.1 The following real estate broker(s) ("Brokers") and brokerage relationships exist in this transaction and are consented to by the Parties (check the applicable boxes):

☐ _____ represents Seller exclusively ("Seller's Broker");

☐ _____ represents Buyer exclusively ("Buyer's Broker"); or

☑ **Cushman & Wakefield of California, Inc.** represents both Seller and Buyer ("Dual Agency").

The Parties acknowledge that Brokers are the procuring cause of this Agreement. See paragraph 24 regarding the nature of a real estate agency relationship. ~~Buyer shall use the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to the Property for a period of 1 year from the date inserted for reference purposes at the top of page 1.~~

7.2 Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated herein, other than the Brokers named in paragraph 7.1, and no broker or other person, firm or entity, other than said Brokers is/are entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such Party. Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any broker, finder or other similar party, other than said named Brokers by reason of any dealings or act of the indemnifying Party.

8.  **Escrow and Closing.**

8.1 Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall constitute not only the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the consummation of the Agreement through

~~NBC~~
INITIALS

PAGE 2 OF 9

~~ACG~~
INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-6/07E

8

the Escrow. Escrow Holder shall not prepare any further escrow instructions restating or amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of the Parties, Escrow Holder may, however, include its standard general escrow provisions.

8.2  As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the Date of Agreement as defined in paragraphs 1.2 and 20.2 and advise the Parties and Brokers, in writing, of the date ascertained.

8.3  Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where the Escrow Holder is located, the law of the state where the Property is located shall prevail.

8.4  Subject to satisfaction of the contingencies herein described  FINAL APPROVALS SET FORTH BY BANKRUPTCY COURT SALE PROCEDURES, Escrow Holder shall close this escrow (the "Closing") by recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing the funds and documents in accordance with this Agreement.

8.5  Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title insurance. (See also paragraph 11).

8.6  Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (i), (n), and (o), 9.4, 9.5, 12, 13, 14, 16, 18, 20, 21, 22, and 24 are, however, matters of agreement between the Parties only and are not instructions to Escrow Holder.

8.7  If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in paragraph 9.2, then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall be promptly refunded all funds deposited by Buyer with Escrow Holder, less only Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation fees and costs.

8.8  The Closing shall occur on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing; provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder, and Brokers, in writing that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

8.9  Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation to pay Escrow Holder's fees and costs or constitute a waiver, release or discharge of any breach or default that has occurred in the performance of the obligations, agreements, covenants or warranties contained therein.

8.10  If this sale of the Property is not consummated for any reason other than Seller's breach or default, then at Seller's request, and as a condition to any obligation to return Buyer's deposit (see paragraph 21), Buyer shall within 5 days after written request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property. Provided, however, that Buyer shall not be required to deliver any such report if the written contract which Buyer entered into with the consultant who prepared such report specifically forbids the dissemination of the report to others.

9.  Contingencies to Closing.

9.1  The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies. IF BUYER FAILS TO NOTIFY ESCROW HOLDER, IN WRITING, OF THE DISAPPROVAL OF ANY OF SAID CONTINGENCIES WITHIN THE TIME SPECIFIED THEREIN, IT SHALL BE CONCLUSIVELY PRESUMED THAT BUYER HAS APPROVED SUCH ITEM, MATTER OR DOCUMENT. Buyer's conditional approval shall constitute disapproval, unless provision is made by the Seller within the time specified therefore by the Buyer in such conditional approval or by this Agreement, whichever is later, for the satisfaction of the condition imposed by the Buyer. Escrow Holder shall promptly provide all Parties with copies of any written disapproval or conditional approval which it receives. With regard to subparagraphs (a) through (i) the pre-printed time periods shall control unless a different number of days is inserted in the spaces provided.

(a) Disclosure. Buyer has 10 or _____ days from the receipt of all applicable disclosures required by law (See AIR Commercial Real Estate Association (AIR) standard form entitled "Seller's Mandatory Disclosure Statement") and provide Buyer with a completed Property Information Sheet ("Property Information Sheet") concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 or _____ days following the Date of Agreement. Buyer has 10 days from the receipt of said disclosures to approve or disapprove the matters disclosed.

(b) Physical Inspection. Buyer has 10 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the physical aspects and size of the Property.

(c) Hazardous Substance Conditions Report. Buyer has 30 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and relevant adjoining properties. Any such report shall be paid for by Buyer. A "Hazardous Substance" for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A "Hazardous Substance Condition" for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law.

(d) Soil Inspection. Buyer has 30 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 30 days of the Date of Agreement.

(e) Governmental Approvals. Buyer has 30 or _____ days from the Date of Agreement to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters.

(f) Conditions of Title. Escrow Holder shall cause a current commitment for title insurance ("Title Commitment") concerning the Property issued by the Title Company, as well as legible copies of all documents referred to in the Title Commitment ("Underlying Documents"), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 or _____ days following the Date of Agreement. Buyer has 10 days from the receipt of the Title Commitment, the Underlying Documents and the plot plan to satisfy itself with regard to the condition of title. The disapproval of Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g) Survey. Buyer has 30 or _____ days from the receipt of the Title Commitment and Underlying Documents to satisfy itself with regard to any ALTA title supplement based upon a survey prepared to American Land Title Association ("ALTA") standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any encroachments of or onto the Property, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h) Existing Leases and Tenancy Statements. Seller shall within 10 or _____ days of the Date of Agreement provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, "Existing Leases") affecting the Property, and with a tenancy statement ("Estoppel Certificate") in the latest form or equivalent to that published by the AIR, executed by Seller and each tenant and subtenant of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate. If any tenant fails or refuses to provide an Estoppel Certificate then Seller shall complete and execute an Estoppel Certificate for that tenancy. Buyer has 10 days from the receipt of said Existing Leases and Estoppel Certificates to satisfy itself with regard to the Existing Leases and any other tenancy issues.

(i) Owner's Association. Seller shall within 10 or _____ days of the Date of Agreement provide Buyer with a statement and transfer package from any owner's association governing the Property. Such transfer package shall at a minimum include copies of the association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 10 days from the receipt of such documents to satisfy itself with regard to the association.

(j) Other Agreements. Seller shall within 10 or 30 days of the Date of Agreement provide Buyer with legible copies of all other agreements ("Other Agreements") known to Seller that will affect the Property after Closing. Buyer has 10 days from the receipt of said Other Agreements to satisfy itself with regard to such Agreements.

(k) Financing. If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan

contingency.

~~(l) Existing Notes. If paragraph 3.1(c) has not been stricken, Seller shall within 10 or _____ days of the Date of Agreement provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, "Loan Documents") to which the Property will remain subject after the Closing. Escrow Holder shall promptly request from the holders of the Existing Notes a beneficiary statement ("Beneficiary Statement") confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid, and (2) the nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has 10 or _____ days from the receipt of the Loan Documents and Beneficiary Statements to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to Buyer except as otherwise provided in this Agreement or approved by Buyer, provided, however, Buyer shall pay the transfer fee referred to in paragraph 3.2 hereof.~~

~~(m) Personal Property. In the event that any personal property is included in the Purchase Price, Buyer has 10 or  30  days from the Date of Agreement to satisfy itself with regard to the title condition of such personal property. Seller recommends that Buyer obtain a UCC-1 report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any liens or encumbrances affecting such personal property that it is aware of within 10 or  30  days of the Date of Agreement.~~

(n) *Destruction, Damage or Loss.* There shall not have occurred prior to the Closing, a destruction of, or damage or loss to, the Property or any portion thereof, from any cause whatsoever, which would cost more than $10,000.00 to repair or cure. If the cost is $10,000.00 or less, Seller shall repair or cure the loss prior to the Closing. Buyer shall have the option, within 10 days after receipt of written notice of a loss costing more than $10,000.00 to repair or cure, to either terminate this Agreement or to purchase the Property notwithstanding such loss, but without deduction or offset against the Purchase Price. If the cost to repair or cure is more than $10,000.00, and Buyer does not elect to terminate this Agreement, Buyer shall be entitled to any insurance proceeds applicable to such loss. Unless otherwise notified in writing, Escrow Holder shall assume no such destruction, damage or loss has occurred prior to Closing.

~~(o) Material Change. Buyer shall have 10 days following receipt of written notice of a Material Change within which to satisfy itself with regard to such change. "Material Change" shall mean a substantial adverse change in the use, occupancy, tenants, title, or condition of the Property that occurs after the date of this offer and prior to the Closing. Unless otherwise notified in writing, Escrow Holder shall assume that no Material Change has occurred prior to the Closing.~~

(p) *Seller Performance.* The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed by Seller under this Agreement.

~~(q) Brokerage Fee. Payment at the Closing of such brokerage fee as is specified in this Agreement or later written instructions to Escrow Holder executed by Seller and Brokers ("Brokerage Fee"). It is agreed by the Parties and Escrow Holder that Brokers are a third-party beneficiary of this Agreement insofar as the Brokerage Fee is concerned, and that no change shall be made with respect to the payment of the Brokerage Fee specified in this Agreement, without the written consent of Brokers.~~

9.2 All of the contingencies specified in subparagraphs (o) through (m) of paragraph 9.1 are for the benefit of, and may be waived by, Buyer, and may be elsewhere herein referred to as "Buyer's Contingencies."

9.3 If any of Buyer's Contingencies or any other matter subject to Buyer's approval is disapproved as provided for herein in a timely manner ("Disapproved Item"), Seller shall have the right within 10 days following the receipt of notice of Buyer's disapproval to elect to cure such Disapproved Item prior to the Expected Closing Date ("Seller's Election"). Seller's failure to give to Buyer within such period, written notice of Seller's commitment to cure such Disapproved Item on or before the Expected Closing Date shall be conclusively presumed to be Seller's Election not to cure such Disapproved Item. If Seller elects, either by written notice or failure to give written notice, not to cure a Disapproved Item, Buyer shall have the right, within 10 days after Seller's Election to either accept title to the Property subject to such Disapproved Item, or to terminate this Agreement. Buyer's failure to notify Seller in writing of Buyer's election to accept title to the Property subject to the Disapproved Item without deduction or offset shall constitute Buyer's election to terminate this Agreement. Unless expressly provided otherwise herein, Seller's right to cure shall not apply to the remediation of Hazardous Substance Conditions or to the Financing Contingency. Unless the Parties mutually instruct otherwise, if the time periods for the satisfaction of contingencies or for Seller's and Buyer's elections would expire on a date after the Expected Closing Date, the Expected Closing Date shall be deemed extended for 3 business days following the expiration of: (a) the applicable contingency period(s), (b) the period within which the Seller may elect to cure the Disapproved Item, or (c) if Seller elects not to cure, the period within which Buyer may elect to proceed with this transaction, whichever is later.

9.4 Buyer understands and agrees that until such time as all Buyer's Contingencies have been satisfied or waived, AND FINAL APPROVALS ARE PROVIDED BY THE BANKRUPTCY COURT, Seller and/or its agents may solicit, entertain and/or accept back-up offers to purchase the Property. BUYER WILL ALLOW SELLER TO GET BACK-UP OFFERS WITH GIVEN NOTICE OF CURRENT ESCROW STATUS.

9.5 The Parties acknowledge that extensive local, state and Federal legislation establish broad liability upon owners and/or users of real property for the investigation and remediation of Hazardous Substances. The determination of the existence of a Hazardous Substance Condition and the evaluation of the impact of such a condition are highly technical and beyond the expertise of Brokers. The Parties acknowledge that they have been advised by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances on the Property or adjoining properties, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests herein.

10.  Documents Required at or Before Closing:
10.1 Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.
10.2 Seller shall deliver to Escrow Holder in time for delivery to Buyer at the Closing:
(a) Grant or grant deed warranty deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.
(b) If applicable, the Beneficiary Statements concerning Existing Note(s).
(c) If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer. The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's Interest in Lease form published by the AIR or its equivalent.
(d) If applicable, Estoppel Certificates executed by Seller and/or the tenant(s) of the Property.
(e) An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by applicable Federal law with respect to purchases from foreign sellers.
(f) If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.
(g) If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.
(h) If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.
10.3 Buyer shall deliver to Seller through Escrow:
(a) The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date.
(b) If a Purchase Money Deed and Purchase Money Deed of Trust are called for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgage loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.
(c) The Assignment and Assumption of Lessor's Interest in Lease form specified in paragraph 10.2(c) above, duly executed by Buyer.
(d) Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.
(e) If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.
(f) If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.
10.4 At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer. In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.



INITIALS                                                                                                    PAGE 4 OF 9                                                          INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION
FORM OFA-7-6/07E

IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.

11.  Prorations and Adjustments.

11.1 *Taxes.* Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available. The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by reason of events occurring prior to the Closing. Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.

11.2 *Insurance.* WARNING. Any insurance which Seller may have maintained will terminate on the Closing. Buyer is advised to obtain appropriate insurance to cover the Property.

11.3 *Rentals, Interest and Expenses.* Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4 *Security Deposit.* Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

11.5 *Post Closing Matters.* Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

~~11.6 Variations in Existing Note Balances. In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof (Existing Note Variation), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation. If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.~~

~~11.7 Variations in New Loan Balances. In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.~~

11.8 *Owner's Association Fees.* Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.

12.  Representations and Warranties of Seller and Disclaimers.

12.1 Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and are true, material and relied upon by Buyer and Brokers in all respects. Seller hereby makes the following warranties and representations to Buyer and Brokers:

(a) *Authority of Seller.* Seller is the owner of the Property and/or has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.

(b) *Maintenance During Escrow and Equipment Condition At Closing.* Except as otherwise disclosed in paragraph 9.1(m) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.

~~(c) Hazardous Substances/Storage Tanks. Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence or prior existence of any above or below ground storage tank.~~

(d) *Compliance.* Seller has no knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement be performed on the Property.

(e) *Changes in Agreements.* Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new leases or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.

(f) *Possessory Rights.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.

(g) *Mechanics' Liens.* There are no unsatisfied mechanics' or materialmens' lien rights concerning the Property. SELLER WILL, DURING BUYER CONTINGENCY PERIOD, PROVIDE AN EXHIBIT LIST IDENTIFYING BY CLAIMANT AND AMOUNT THE MECHANICS LIENS THAT ARE OUTSTANDING.

(h) *Actions, Suits or Proceedings.* Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property or the right to occupy or utilize same.

(i) *Notice of Changes.* Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(n)) affecting the Property that becomes known to Seller prior to the Closing.

(j) *No Tenant Bankruptcy Proceedings.* Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.

~~(k) No Seller Bankruptcy Proceedings. Seller is not the subject of a bankruptcy, insolvency or probate proceeding.~~

(l) *Personal Property.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.

12.2 Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property. The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party herein.

12.3 In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4 Any environmental reports, soils reports, surveys, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk. Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

13.  Possession.

Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants under Existing Leases.

14.  Buyer's Entry.

At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement. No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld. Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the reconstruction or removal of any disrupted soil or material as Seller may reasonably direct. All such inspections and tests and any other work conducted or materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property of and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

15.  Further Documents and Assurances.

The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for Closing as and when required by this Agreement. The Parties agree to provide all further information, and to execute and deliver all further documents, reasonably required by Escrow Holder or the Title Company.

16.  Attorneys' Fees.

If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

17.  Prior Agreements/Amendments.

17.1 This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property




INITIALS

PAGE 5 OF 9



INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-6/07E

17.2 Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

18. ~~Broker's Rights.~~
~~18.1  If this sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated. If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.~~
~~18.2  Upon the Closing, Brokers are authorized to publicize the facts of the transaction.~~

19. Notices.
19.1 Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request, approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger or by mail, postage prepaid, to the address set forth in this Agreement or by facsimile transmission.
19.2 Service of any such communication shall be deemed made on the date of actual receipt if personally delivered. Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed. Communications sent by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier. Communications transmitted by facsimile transmission shall be deemed delivered upon telephonic confirmation of receipt (confirmation report from fax machine is sufficient), provided a copy is also delivered via delivery or mail. If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.
19.3 Any Party ~~or Broker~~ hereto may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

20. Duration of Offer.
20.1 If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of

Los Angeles _____ on the date of THE COURT HEARING, ANTICIPATED TO BE JUNE 30, 2010
_____, it shall be deemed automatically revoked.

20.2 The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

21. LIQUIDATED DAMAGES. (This Liquidated Damages paragraph is applicable only if initialed by both Parties).
THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT. THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF _____ $350,000.00 _____. UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.

<div style="text-align:center">

*Buyer Initials*       *Seller Initials*

</div>

22. ~~ARBITRATION OF DISPUTES. (This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)~~
~~22.1  ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO THE LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF DEPOSIT MONEY, SHALL BE DETERMINED BY BINDING ARBITRATION BY, AND UNDER THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("COMMERCIAL RULES"). ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. ANY SUCH CONTROVERSY SHALL BE ARBITRATED BY 3 ARBITRATORS WHO SHALL BE IMPARTIAL REAL ESTATE BROKERS WITH AT LEAST 5 YEARS OF FULL TIME EXPERIENCE IN BOTH THE AREA WHERE THE PROPERTY IS LOCATED AND THE TYPE OF REAL ESTATE THAT IS THE SUBJECT OF THIS AGREEMENT. THEY SHALL BE APPOINTED UNDER THE COMMERCIAL RULES. THE ARBITRATORS SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW, THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO, AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION HEARING. PRE-ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS. THE AWARD SHALL BE EXECUTED BY AT LEAST 2 OF THE 3 ARBITRATORS, BE RENDERED WITHIN 30 DAYS AFTER THE CONCLUSION OF THE HEARING, AND MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH 18 HEREOF. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT JURISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT.~~
~~22.2  BUYER'S RESORT TO OR PARTICIPATION IN SUCH ARBITRATION PROCEEDINGS SHALL NOT BAR SUIT IN A COURT OF COMPETENT JURISDICTION BY THE BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE UNLESS AND UNTIL THE ARBITRATION RESULTS IN AN AWARD TO THE SELLER OF LIQUIDATED DAMAGES, IN WHICH EVENT SUCH AWARD SHALL ACT AS A BAR AGAINST ANY ACTION BY BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.~~
~~22.3  NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THIS SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.~~

~~WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.~~

<div style="text-align:center">

*Buyer Initials*       *Seller Initials*

</div>

23. Miscellaneous.
23.1 Binding Effect.  This Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that this Agreement is executed.
23.2 Applicable Law.  This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located.
23.3 Time of Essence.  Time is of the essence of this Agreement.
23.4 Counterparts.  This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.
23.5 Waiver of Jury Trial.  THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR

<div style="display:flex; justify-content:space-between">

INITIALS      PAGE 6 OF 9      INITIALS

</div>

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION      FORM OFA-7-6/07E

PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.
23.6  Conflict.        Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.
23.7  1031 Exchange.   Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initiating an exchange shall bear all costs of such exchange.
23.8 Days.        Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.
24.  Disclosures Regarding The Nature of a Real Estate Agency Relationship.
24.1 The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the California Civil Code, as summarized in paragraph 24.2.
24.2  When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:
(a) Seller's Agent. A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) To the Seller: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) To the Buyer and the Seller: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.
(b) Buyer's Agent. A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations. (1) To the Buyer: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) To the Buyer and the Seller: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.
(c) Agent Representing Both Seller and Buyer. A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not without the express permission of the respective Party, disclose to the other Party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
(d) Further Disclosures. Throughout this transaction Buyer and Seller may receive more than one disclosure, depending upon the number of agents assisting in the transaction. Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in this transaction and that disclosure. Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.
24.3  Confidential Information: Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.
25.  Construction of Agreement. In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.
26   Additional Provisions:
Additional provisions of this offer, if any, are as follows or are attached hereto by an addendum consisting of paragraph _____ 27

through_____    (If there are no additional provisions write "NONE".)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:

1.     SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.
2.     RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PROPERTY FOR BUYER'S INTENDED USE.

WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

NOTE:
1.        THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.

INITIALS

PAGE 7 OF 9

INITIALS

2.     IF THE BUYER IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE
OFFICERS.

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

| BROKER: | BUYER: |
|---|---|
| CUSHMAN & WAKEFIELD OF CALIFORNIA, INC. | AUTRY NATIONAL CENTER OF THE AMERICAN WEST |
| | By: _John L. Gray_ |
| | Date: |
| Attn: William Puget and Jeff Welch | Name Printed: John L. Gray |
| Title: | Title: President & CEO |
| Address: 601 S Figueroa Street, 47th Floor | Telephone:(    ) |
| Los Angeles, CA  90017 | Facsimile:(    ) |
| Telephone:(213) 955-5100 | |
| Facsimile:(    ) | |
| Email: | By: |
| Federal ID No. | Date: |
| | Name Printed: |
| Broker/Agent DRE License #: BROKER:00616335 Agent #s:W | Title: |
|   Puget:00449321/J. Welsh:00616335 | Address: |
| | |
| | Telephone:(    ) |
| | Facsimile:(    ) |
| | Email: |
| | Federal ID No. |

27.  Acceptance.
   27.1   Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions
therein specified.
   27.2   Seller acknowledges that Brokers have been retained to locate a Buyer and are the procuring cause of the purchase and sale of the
Property set forth in this Agreement. In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate
Brokerage Fee in a sum equal to ___5___ % of the Purchase Price to be divided equally between Seller's Broker and Buyer's Broker. This
Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the
account of Seller at the Closing.
   27.3   Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.

| BROKER: | SELLER: |
|---|---|
| CUSHMAN & WAKEFIELD OF CALIFORNIA, INC. | HOWARD M EHRENBERG CHAPTER 7 TRUSTEE FOR ESTATES OF DEBTOR AXIUM, INTL |
| | By: _Howard M. Ehrenberg, Trustee_ |
| | Date: |
| Attn: Carl Muhlstein and Manfred Schaub | Name Printed: Howard M. Ehrenberg |
| Title: | Title: |
| Address: 601 S Figueroa Street  47th Floor | Telephone:(213) 626.2311 |
| Los Angeles  CA  90017 | Facsimile:(    ) |
| Telephone:(213) 955.5100 | |
| Facsimile:(    ) | |
| Email: | By: |
| Federal ID No.: | Date: |
| | Name Printed: |
| Broker/Agent DRE License #: BROKER:00616335   Agent | Title: |
| #s:  C Mulstein:00595250/M Schaub:01262271 | Address: 333 S Hope Street |
| | Los Angeles, CA  90017 |
| | Telephone:(213) 626.2311 |
| | Facsimile:(    ) |
| | Email: |
| | Federal ID No.: |

NOTICE: These forms are often modified to meet changing requirements of law and industry needs. Always write or call to make sure you
are utilizing the most current form: AIR Commercial Real Estate Association, 800 W 6th Street, Suite 800, Los Angeles, CA 90017.
Telephone No. (213) 687-8777. Fax No.: (213) 687-8616.

INITIALS                          PAGE 8 OF 9                                        INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                       FORM OFA-T-6/07E

14

© Copyright 2003 By AIR Commercial Real Estate Association.
All rights reserved.
No part of these works may be reproduced in any form without permission in writing.

PAGE 9 OF 9

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

INITIALS

FORM OFA-7-6/07E

15

<div align="center">

ADDENDUM TO
AIR STANDARD OFFER, AGREEMENT AND ESCROW
INSTRUCTIONS FOR PURCHASE OF REAL ESTATE
BY AND BETWEEN
AUTRY NATIONAL CENTER OF THE
AMERICAN WEST  ("Buyer")
AND
HOWARD M. EHRENBERG CHAPTER 7 TRUSTEE
FOR ESTATES OF DEBTOR AXIUM, INC. ("Seller")
Dated June 23, 2010

</div>

**Paragraph 27.**

This Addendum is attached to, and a part of, the Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate, dated June 23, 2010 between, AUTRY NATIONAL CENTER OF THE AMERICAN WEST, as Buyer, and HOWARD M. EHRENBERG CHAPTER 7 TRUSTEE FOR ESTATES OF DEBTOR AXIUM, INC., as Seller.  For convenience, all capitalized terms not otherwise defined in this Addendum have the same meaning ascribed to them in the Agreement.  Furthermore, paragraph references used in this Addendum correspond to the paragraphs set forth in the Agreement.

**2.3** The Property also includes, at no additional cost to Buyer, all other personal property located at the Property and all licenses and permits, blueprints, plans, specifications, maps, drawings, guaranties and warranties made by any contractors, subcontractors, vendors or suppliers regarding their performance or the quality of materials supplied in connection with the construction or operation of all or any part of the improvements on the Property; all intangible personal property related to or arising out of the ownership of the Property, including, without limitation, all development entitlements and similar rights of use or development, if any, and all easements, rights of way and other appurtenances to the Property, together with any right, title and interest of Seller in and to adjacent streets, alleys or rights of way.  . All of the personal property shall be maintained in its present condition. None of the personal property shall be removed from the Property without Buyer's consent. Seller will execute such additional documents or instruments as are necessary or appropriate to convey any aspect of the Property, including, without limitation, a bill of sale for any items deemed to be personal property.

**9.1** All periods of time referred to in this Agreement are calculated by excluding the first day and including the last day and shall include all Saturdays, Sundays and holidays (national, State of California and local), except when it is the last day of a given period in which event it shall be excluded.

**9.1(f)** Buyer hereby disapproves of all monetary encumbrances. Accordingly, Seller agrees to cause to be paid, or otherwise removed from the Owner's policy of title insurance to be issued at Closing, all monetary liens other than property taxes and assessments not yet due and payable as of Closing.

**10.2(a)** The grant deed shall not show on the face thereof the documentary transfer tax, but shall be accompanied by a separate document in form and substance satisfactory to the County Recorder setting forth the amount of the documentary tax.

**18.**       This paragraph is deleted in its entirety.

**23.5** SUCH WAIVER APPLIES TO THE EXTENT PERMITTED BY LAW

Except as expressly provided herein, Purchaser hereby acknowledges and agrees that Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Property, the merchantability or fitness of the Property, or any other matter or thing relating to the Property (or any portion thereof). Without in any way limiting the foregoing, except as otherwise expressly provided herein, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to the Property. Purchaser further acknowledges that Purchaser has conducted an independent inspection and investigation of the Property and all such other matters relating to or affecting the Property as Purchaser deemed necessary or appropriate and that in proceeding with the consummation of its acquisition of the Property, except for the representations and warranties set forth herein, Purchaser is doing so based solely upon such independent inspections and investigations. Accordingly, and in light of the fact that the representations and warranties set forth herein will lapse and terminate and be of no further force or effect following the Closing, Purchaser will accept the Property at the Closing "AS IS," "WHERE IS," and "WITH ALL FAULTS."

_____
Initials

_____
Initials

This Agreement and the transactions contemplated hereby are subject to Seller's right and ability to consider higher or better competing bids with respect to the Property pursuant to a Bidding Procedures Order and Seller may solicit and negotiate higher and/or otherwise better offers from any party deemed appropriate by the Seller.

This Agreement and the transactions contemplated hereby are subject to entry of an order from the United States Bankruptcy Court, Central District of California, Los Angeles Division, in the presently pending case baring Case No. LA 08-10277-BB.

Any disputes that arise regarding this transaction shall be exclusively resolved by the United States Bankruptcy Court with jurisdiction over the Axium International, Inc. case.


"BUYER"

AUTRY NATIONAL CENTER OF THE
AMERICAN WEST


By: _John H. May_

Date: _____


"SELLER"

HOWARD M. EHRENBERG CHAPTER 7
TRUSTEE FOR ESTATES OF DEBTOR
AXIUM, INC

By: _Howard M. Ehrenberg, Trustee_

Date: _____


Initials _____

Initials _____

| In re:                          | CHAPTER: 7                       |
| Axium International, Inc.        |                                  |
|                     Debtor(s).  | CASE NUMBER: 2:08-bk-10277-BB    |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406

A true and correct copy of the foregoing document described as **EXHIBIT A TO ORDER, AFTER HEARING, GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 210 S. VICTORY BOULEVARD, BURBANK, CALIFORNIA, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (2) CONFIRMING SALE TO THIRD PARTY OR THE HIGHEST BIDDER APPEARING AT THE HEARING; (3) DETERMINING THAT BUYER IS A GOOD FAITH PURCHASER; AND (4) WAIVING THE FOURTEEN (14) DAY STAY PRESCRIBED BY RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

☐ Service Information continued on attached page.

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On July 8, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Attorneys for Debtors**
David M. Poitras, Esq.
Jeffer, Mangels, Butler & Marmaro LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

**Office of the United States Trustee**
Ernst & Young Plaza
725 South Figueroa Street, 26th Floor
Los Angeles, CA 90017

☐ Service Information continued on attached page.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                          **F 9013-3.1**

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on July 8, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Sheri Bluebond
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1482
Los Angeles, CA 90012-3332

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 8, 2010 | Denise Givens | /s/Denise Givens |
|---|---|---|
| *Date* | *Type Name* | *Signature* |